John D. **KEYS** and Lewis E. **Eastham,** Plaintiffs-Appellants,

v.

Dan M. **WOLFE, et al.,** Defendants-Appellees.

No. 82–1442.

United States Court of Appeals, Fifth Circuit.

July 15, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 31, 1983.

Haynes & Boone, Werner A. Powers, Dallas, Tex., for plaintiffs-appellants.

Coyt Randal Johnston, Dallas, Tex., for Luther Henderson, Chas. Tindall, Alden Wagner, Wolfe, Maguire, Moseley and O'Neal.

Fulbright & Jaworski, Carol S. Butner, Tom Alan Cunningham, Houston, Tex., for Milton E. Loy.

Baker, Miller, Phillips & Murray, Morris C. Gore, Dallas, Tex., for Bascom Lynn.

Stubbeman, McRae, Sealy, Laughlin & Browder, James V. Hammett, Jr., Thomas J. Mitchell, III, Austin, Tex., for Dean Bagley.

Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI*, District Judge.

WYZANSKI, District Judge:

Relying upon sections 15 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77o and 77q(a), and sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, as well as Texas statutory and common law, the plaintiffs, John D. Keys and Lewis E. Eastham, holders of investment contracts, relating to pecan orchards operated by Wolfe Pecanlands, Inc., a Texas corporation, filed a complaint which, as amended, consisted of nine counts setting forth claims against Dan M. Wolfe and other named individual defendants.

* District Judge of the District of Massachusetts, sitting by designation.

Responding to defendants' pre-trial motion the district court, 540 F.Supp. 1054, by orders dated April 29, 1982 and July 23, 1982 dismissed against all defendants counts 5 through 9, and with respect to defendants Bagley, O'Neal, Lynn, Maguire and Moseley dismissed counts 1 through 4. In accordance with Fed.R.Civ.P. 54(b), the district court on July 23, 1982 entered final judgment as to all claims dismissed by those two orders.

Plaintiffs appeal from the pre-trial dismissal of counts 5 through 9 of their amended complaint. The principal issues raised are whether in dismissing count 5— which alleges claims under both the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* (and, as a corollary, dismissing counts 6 through 9 which allege state causes of action jurisdictionally dependent on count 5), the court erred in holding (1) that § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), did not give the plaintiffs a private right of action, and (2) that the representations in and the omissions from defendant Maguire's 1979 memorandum were deceptions in connection with the "purchase or sale of any security" as that term is used in section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and in the implementing regulation, Rule 10b–5, 17 C.F.R. § 240.10b–5.

To determine the correctness of the district judge's pre-trial dismissal of counts 5 through 9 of the complaint, we need not set forth in *ipsissima verba* that pleading with its incorporated annexes. Our purposes will be best served by a narrative supplemented by a few crucial quotations from the complaint itself.

Texas is the site of all the facts relevant to the case: the enterprise involved, the prospectus and the memorandum issued, the representations made, the property sold, the contracts executed, the citizenship of the parties, and the obligations and risks undertaken. No one has doubted that the governing law is either the law of the United States or the law of Texas or both. No other law is referred to or could conceivably be controlling.

Wolfe Pecanlands, Inc. ["the corporation"], which is not a party to this action, was organized under the law of Texas, Maguire was its president and the other individual defendants were among the corporation's directors, officers or key employees and were its agents.

The corporation is a developer of pecan tree plantations.

It acquired undeveloped property, subdivided it into tracts, and sold those tracts to purchasers in a double-barreled transaction involving two closely integrated documents: (1) a "land sales contract" and (2) a "tree growing and orchard management contract" which the aforesaid land sales contract incorporates by repeated reference.

We need not pause to set forth the details of the land sales contract inasmuch as it standing alone has led to no dispute. It is sufficient to note that that contract not merely provides for the transfer of title to the purchaser and the terms of his payment, but specifically provides that it "and the above referenced Tree Growing and Orchard Management Contract constitute the entire agreement between Seller and Buyer concerning the above described property."

In connection with its role as a combined developer, planter, grower, irrigator and orchard manager, the corporation specifically promised in the Tree Growing and Orchard Management Contract to render two types of service: "Phase I [covering the first five years after the execution of the contract] ... During this phase the Grower [i.e. the corporation] will plant and grow to bearing size on Buyer's [i.e. the plaintiff's] land ... an orchard of hybrid pecan trees"; "Phase II [covering the years subsequent to the first five] ... During this phase, the Grower will operate and manage the orchard and harvest the in-shell pecan crop." With respect to the aforesaid Phase II, the corporation, in paragraph 7 of The Tree Growing and Orchard Management Contract, promised that "Grower" [i.e. the corporation] "with its own or contract personnel and equipment agrees to manage, shape, cultivate, *irrigate,* spray, thin, harvest, and otherwise operate the orchard of hybrid pecan trees ...." [Emphasis supplied.] The corporation agreed in paragraph 8 initially to pay for the out-of-pocket management expenses, including irrigation expenses, and in paragraph 9 to reimburse itself "from the gross receipts realized from the sale of such crop," or, if those receipts were inadequate "from the proceeds of the sale of crops in succeeding years."

Paragraph 24 provides that "In the event of default by Grower to perform any of its obligations ... then the Buyer may either declare this Contract terminated or the Buyer may resort to such other remedies as

may be available to him under the terms of this Contract or the laws of Texas."

The plaintiffs in counts 1 through 4 of the complaint (counts which the district court has not dismissed and which are not before us) alleged that in connection with the 1973 prospectus the defendants both made material false representations and omitted material facts. They also allege in counts 5 through 9 which are now before us that after the plaintiffs had acquired title to the tracts and they had completed all payments due to the corporation, the defendants—or some of them—by a January 1979 memorandum addressed to plaintiffs, *inter alia,* omitted material facts to induce the plaintiffs, in effect, (1) to release the corporation from the irrigation arrangement contemplated in the 1973 contracts and instead (2) to enter into a different arrangement. Under the new 1979 arrangement each of the plaintiffs petitioned that his tracts should become, and they did become, within the boundaries of—and thus part of—Erath County Water Control & Improvement District No. 1 ["the Water District"]—a political subdivision of and a governmental agency of the State of Texas. As a consequence, whereas previously with respect to his tract the plaintiff had no personal obligation to pay for irrigation costs and his tract was not expressly subject to any potential lien for irrigation expenses incurred by the corporation (which had merely a right of reimbursement from the proceeds of pecan sales), after the plaintiff's petition was granted by the Water District the plaintiff became personally liable for water assessments or taxes or the like levied by the Water District and the plaintiff's tract became expressly subject to potential liens for unpaid taxes and to the risk of foreclosure and sale if the taxes remained unpaid.

In short, the plaintiffs and the corporation *substituted* for the old contractual provisions with respect to irrigation water obligations, payments, and methods of collection a wholly new set of provisions which constituted a material part of a "substituted contract."[1] Counts 5 through 9 allege that the defendants or some of them by omitting material facts from the 1979 memorandum made a misrepresentation which

induced the plaintiffs to enter into a substituted contract in place of one barrel of a double-barreled contract.

█ In light of the foregoing allegations of the complaint, the district court first examined count 5 in order to determine whether either plaintiff had a private right of action against defendants under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). That court held that under the 1933 Act there was no such private right. This court's subsequent decision in *Landry v. All American Assurance Co.,* 688 F.2d 381, 384–91 (5th Cir.1982), fully supports that ruling and obviates the need of further discussion. That ruling was not error.

The district court then addressed the question whether either plaintiff made *in 1979* a "purchase or sale of any security" as that term is used in section 10(b) of the Securities Act of 1934 and the implementing regulation. That court ruled that neither plaintiff had made such a 1979 purchase or sale because:

> "By agreeing to petition to annex their land to the water district, plaintiffs made no 'investment' decision because they made no investment. The right to irrigation, not a 'fresh right' but one established by the original investment contract, was to be satisfied at no cost to plaintiffs. They gave no additional consideration .... Viewed most favorably to plaintiffs, there was no more than an inducement to retain an earlier purchased security."

We reject that reasoning and the conclusion to which it led the district judge. In our view, if the allegations and implications of the complaint be taken as true—as, of course, they must be when testing the pretrial dismissal of count 5 of the complaint for failure to state a cause of action—we have here presented a situation in which each plaintiff made a substitute contractual arrangement under which he became subject to wholly new personal direct obligations for irrigation supplied to his tract and became subject to wholly new risks of loss of his property if he did not pay the taxes submitted by the district to which in 1979 he added his tract.

█ The test for determining whether a particular transaction meets the "in connec-

---

1. Compare Restatement (Second) of Contracts § 279 Comment a (1981): "A substituted contract is one that is itself accepted by the obligee in satisfaction of the original duty and thereby

discharges it. A common type of substituted contract is one that contains a term that is inconsistent with an earlier contract between the parties."

tion with a purchase or sale" requirement of Section 10(b) and Rule 10b–5 was set forth by this court in *Rathborne v. Rathborne,* 683 F.2d 914 (5th Cir.1982):

> [W]e must ask whether the transaction has wrought a fundamental change in the nature of the plaintiff's investment .... [T]he core issue is whether the transaction has transformed the plaintiff into the functional equivalent of a purchaser or seller—has the plaintiff been forced to exchange his stock for shares representing a participation in a substantially different enterprise? We must focus upon the economic reality of the transaction ....

*Id.* at 920. While decided in the context of a corporate reorganization, the principles announced in *Rathborne* apply as well to situations, such as here, where there has been a voluntary amendment to an existing security. Thus, before changes in the rights of a security holder can qualify as the "purchase" of a new security under Section 10(b) and Rule 10b–5, there must be such a significant change in the nature of the investment or in the investment risks as to amount to a new investment. *See Abrahamson v. Fleschner,* 568 F.2d 862 (2d Cir. 1977).

In reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we must be mindful that the complaint should not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dike v. School Board of Orange County, Florida,* 650 F.2d 783 (5th Cir.1981). Thus, the question presented by this case is whether it is beyond doubt that the plaintiffs can prove no set of facts in support of their claim which should show such a significant change in the nature of their investment or in their investment risks as to amount to a new investment.

With this standard in mind, we examine the following relevant allegations of plaintiffs' complaint. The original agreement between the parties contemplated that the cost of irrigation were to be borne by the corporation, which would be reimbursed through pecan orchard revenues. At the time of the original agreement, the corporation intended to install a recently developed drip irrigation system. However, financing the irrigation system through traditional methods would mean that the debt would appear on the corporation's balance sheets, thereby reducing the probability of successful future offerings. Therefore, as an alternative to traditional financing, the corporation formed the Water District, through which it could sell tax-exempt bonds. As these bonds became due, the corporation planned to use pecan orchard revenues to service the bonds, treating these payments as pecan orchard management costs which were reimbursable to the corporation. The Water District also has the power to levy and collect ad valorem taxes on orchard property within the district. The corporation agreed to pay any assessments by the Water District. These payments would also be treated as orchard management costs. However, if the corporation failed to pay the assessments, plaintiffs would have to pay the taxes or face foreclosure of tax liens on their property.[2]

We cannot say, based upon these allegations, that the plaintiffs cannot prove any set of facts which would entitle them to relief. The determination of whether the personal liability for Water District taxes and the risk of tax liens amounts to a significant change in the nature of the investment or in the investment risks cannot properly be made at this stage of the proceedings. Such a determination, which hinges on the economic reality of the transaction rather than on formal changes in the rights and obligations of the parties, will involve the consideration of several factors not reflected in the pleadings. For example, one important factor will be the amount of the Water District taxes. If these taxes are nominal, the personal liability assumed by the plaintiffs, when compared with their economic risks under the agreement as a whole, may not rise to the level of a *significant* change. We, of course, express no view as to the ultimate outcome of such a determination; we merely hold that this determination cannot properly be made on the pleadings.

It follows that the district court erred in dismissing count 5 of the complaint.

Counts 6 through 9 present state causes of action which the plaintiff alleged came within the district court's pendent jurisdiction. It was the district court's opinion that

---

2. Plaintiffs allege that the Water District did indeed levy taxes against their property and that the corporation failed to pay these assessments. Plaintiffs were forced to pay these taxes and continue to pay Water District taxes, while they have received no irrigation services.

418

the plaintiffs in count 5 had not alleged a federal cause of action and so it was undesirable if not indeed improper for the district court to entertain on the theory of pendent jurisdiction the state causes of action which plaintiffs alleged in courts 6 through 9. Inasmuch as we have just held that the plaintiffs are entitled to offer evidence on count 5, it follows that the basis on which the district court dismissed counts 6 through 9 has disappeared. Since we are reinstating count 5, we set aside the district court's dismissal of counts 6 through 9—but without prejudice to the district court's right to consider afresh at any stage of this case whether to exercise pendent jurisdiction over the state causes of action.

JUDGMENT DISMISSING COUNTS 5 THROUGH 9 REVERSED.