O. CURRIE

v.

CAYMAN RESOURCES CORPORA-
TION, Cayman Production Company,
Cayman Corporation, Reb Petroleum
Company f/k/a Rebpet, Inc., Rebpet,
Ltd. 1976–2, Rebpet 1977–1 Drilling
Program, Rebpet Partners, Ltd. 1978,
Robert E. Best, R.W. McCleskey, Jr.,
Melvin L. Wellons, David M. Whitney,
William C. Rankin, Rebpet Invest-
ments, Inc., Donald W. Fowler, J.G.
O'Donohoe, Hugh Echols.

No. C82–1902A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 26, 1984.

Karen B. Bragman, Charles T. Huddleston, Jeffrey M. Smith, Bondurant, Miller, Hishon & Stephenson, Atlanta, Ga., for plaintiff.

David A. Rabin, Morris & Manning, Atlanta, Ga., for defendants Rebpet, Ltd. 1976–2, Rebpet 1977–1 Drilling Program, Rebpet Partners, Ltd. 1978, Robert E. Best, R.W. McCleskey, Jr., Melvin L. Wellons, Rebpet Investments, Inc.

Paul Webb, Jr., Philip S. Coe, Webb & Daniel, Atlanta, Ga., for defendants Cayman Resources Corp., Cayman Production Co., Cayman Corp., Rebpet, Ltd. 1976–2, Rebpet 1977–1 Drilling Program, Rebpet Partners, Ltd. 1978, David M. Whitney, William C. Rankin.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants Cayman Resources Corp., Cayman Production Co., Cayman Corp., Reb Petroleum Co. f/k/a Rebpet, Inc., Rebpet, Ltd. 1976–2, Rebpet 1977–1 Drilling Program, Rebpet Partners, Ltd. 1978, Melvin L. Wellons, David M. Whitney, William C. Rankin.

J.G. O'Donohoe, pro se.

## ORDER

MOYE, Chief Judge.

This action, involving sixteen defendants, concerns various alleged violations of the Securities Act of 1933 (Securities Act), the Securities Exchange Act of 1934 (Exchange Act), and regulations of the Securities and Exchange Commission promulgated thereunder. In addition, the plaintiff further alleges various state law claims pursuant to the laws of Georgia and Texas. Jurisdiction is predicated on section 22(a) of the Securities Act, 15 U.S.C.A. § 77v(a) (West 1981), section 27 of the Exchange Act, 15 U.S.C.A. §§ 78aa (West 1981), and pendent jurisdiction.

The case is currently before the Court on motions to dismiss issuing from two of the defendants. Hugh Echols, one defendant, moves to dismiss pursuant to Fed.R.Civ.P. 12(b) (Rule 12(b)), or alternatively, to require the plaintiff to post an undertaking for the payment of fees and expenses pursuant to section 11(e), 15 U.S.C.A. § 77k(e)(3) (West 1981), of the Exchange Act. Mr. Echol's motion pertains to the plaintiff's complaint as amended through the first and second amendments.

The case is also before the Court on the motion of Cayman Resources Corporation, Cayman Production Company, and Cayman Corporation (Cayman defendants) to dismiss the third count of the complaint as amended through the third amendment (Amendment) pursuant to Rule 12(b).

The plaintiff's Amendment states the claims that currently have vitality; i.e., some of the claims set forth in the original complaint have been dropped. For this reason, those grounds of Mr. Echols' motion to dismiss which respond to claims now lacking vitality will not be considered by this Court. The plaintiff has set forth the following claims in counts I through X of the complaint, as amended, against the defendants, namely, that Mr. Echols and others are liable under or for:

(1) section 10(b) of the Exchange Act, 15 U.S.C.A. § 78j(b) (West 1981) (section 10(b)), and rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1983) (rule 10b–5);

(2) section 12(2) of the Securities Act, 15 U.S.C.A. § 77*l* (2) (West 1981) (section 12(2));

(3) section 17(a)(1) through (3), 15 U.S.C.A. § 77q(a) (West 1981) of the Securities Act;

(4) section 12(1) of the Securities Act, 15 U.S.C.A. §§ 77*ll* (1) (West 1981) (section 12(1)), and section 5(a) of the Securities Act, 15 U.S.C.A. §§ 77e(a) (West 1981) (section 5(a));

(5) O.C.G.A. §§ 10–1–372, 10–5–12, 51–6–1, & 14–9–27 (1982);

(6) Tex.Rev.Civ.Stat.Ann. art. 581–33 A(2) (Vernon 1964 & Supp.1984);

(7) Georgia and Texas common law fraud;

(8) breach of fiduciary duties as general partner;

(9) negligence; and

(10) breach of the limited partnership agreements.

Mr. Echols has moved for dismissal on those grounds which have continuing vitality as follows: (1) each count alleging fraud is defective for failure to plead with the particularity required by Rule 9(b), (2) each count stated in the complaint is barred by the applicable statute of limitations, (3) the third count is defective because no private right of action can be brought under section 17(a) of the Securities Act, (4) the plaintiff has failed to set forth claims under the Georgia Securities Act of 1973, the Georgia Uniform Limited Partnership Act, and Georgia's Uniform Deceptive Trade Practices Act upon which relief can be granted, (5) the plaintiff's claim for negligence is similarly defective, and (6) the plaintiff's claim for breach of the limited partnership agreements is similarly defective. The Cayman defendants have moved to dismiss count three of the Amendment on the same ground as Mr. Echols.

For the reasons set forth below, the Court grants the motion of Mr. Echols to dismiss in part and grants the motion of the Cayman defendants to dismiss count three of the complaint, as amended. The

Court is confronted with a rather lengthy set of interrelated documents upon which the current controversy must be resolved. In consequence, it is necessary to set forth the operative facts and procedural posture in some detail before attempting any discussion of the legal problems in this case.

## I. FACTUAL BACKGROUND

On August 30, 1982, Mr. Currie filed a somewhat nebulous, multiple-count complaint in this Court. The plaintiff's original complaint included allegations against the Cayman defendants and against David M. Whitney and William Rankin, as "officers and/or directors" of the Cayman defendants. It also included allegations against REB Petroleum company (formerly REB-PET, Inc.), REBPET, Ltd. 1976–2, REB-PET 1977–1 Drilling Program, REBPET Partners, Ltd. 1978, REBPET Investments, Inc., and Robert E. Best, R.W. McCleskey, Jr., and Melvin L. Wellons, as "officers and/or directors" of REB Petroleum Company, its successors and assigns, and as "officers and/or directors" of REBPET Investments, Inc. In a second amendment, mistakenly entitled "Third Amendment to Complaint," [1] the plaintiff added J.G. McDonohoe and Hugh Echols as defendants in connection with their role as alleged directors [2] of REB Petroleum Company and its successors and assigns.[3] This amendment also added Donald W. Fowler as a defendant in connection with his role as a former director of the REB defendants and as current director of Cayman Resources Corporation.

According to the plaintiff's complaint, as amended, the REB and Cayman defendants are small, independent oil companies involved in the production and sale of hydrocarbon substances. The REB Petroleum Company financed its operations by the formation of limited partnerships, of which it was the sole general partner. Interests in these partnerships were sold to limited partners such as the plaintiff. The offer and sale of these partnerships were represented as "private offerings" of securities therefore exempt from Securities and Exchange Commission registration requirements. Nor were they registered in the states of Georgia or Texas. The plaintiff eventually purchased limited partnership interests in three such limited partnerships. The REB defendants made use of the mails and interstate telephone to sell and transmit the limited partnership agreements and prospectus to the plaintiff.

According to the plaintiff's further allegations, one or more of the REB defendants engaged in a variety of misrepresentations to the plaintiff in order to induce him to contribute capital for the purchase of these limited partnership interests. As of the commencement of the lawsuit, the plaintiff had made total capital contributions in excess of $400,000. The plaintiff further alleges misrepresentations and misconduct by the REB defendants involving a series of amendments to the limited partnership agreements providing for an increase in certain "non-consent" assessments on prospects held by the REB defendants. Complaint, filed August 30, 1982, at ¶¶ 1–50, 65, 72, 78, & 85.

The Cayman defendants became involved in the present dispute as a result of the REB defendants' exchange of the plaintiff's interests in the three limited partnerships for 263,018 shares of common stock in Cayman Resources Corporation, effective March 19, 1982. This occurred pursuant to a registered offer to exchange, and the stock was distributed to the plaintiff. In the exchange, Cayman Production Company became the general partner of the

---

1. See the plaintiff's Notice of Correction of Typographical Errors, filed April 16, 1984.

2. Mr. Echols is alleged to be liable as a "controlling person" within the meaning of section 20 of the Securities Act, 15 U.S.C.A. § 78t(a) (West 1981), section 15 of the Exchange Act, 15 U.S.C.A. § 77o (West 1981), O.C.G.A. § 10–5–14(b) (1982), and Tex.Rev.Civ.Stat.Ann. art. 581–33 F (Vernon Supp.1984).

3. The defendants REB Petroleum Company, REBPET, Ltd. 1976–2, REBPET Drilling Program, REBPET Partners, Ltd. 1978, and those defendants mentioned above as officers or directors associated therewith, are hereinafter collectively referred to as the "REB defendants."

limited partnerships in question. The plaintiff alleges various material misrepresentations and misconduct on the part of the Cayman defendants in connection with this exchange. Plaintiff's first amendment to complaint, filed December 23, 1982, at ¶¶ 130–31.

On December 23, 1982, the plaintiff filed his first amendment to his complaint, including additional legal claims against the defendants. The REB defendants answered the original complaint on December 30, 1982, subsequently answering the first amendment on January 13, 1983. On September 9, 1983, the Cayman defendants filed a motion to dismiss, or alternatively, a motion for a more definite statement. The REB defendants (with the exception of Mr. Echols, Mr. McDonohoe, and Mr. Wellons) then decided, notwithstanding the earlier answers, to file a motion to dismiss the complaint as amended, or, alternatively, to require the plaintiff to post an undertaking for the payment of the defendants' fees and expenses. This motion was filed on November 16, 1983, and the motion to dismiss was modeled on the Cayman defendants' motion. On January 23, 1984, the plaintiff moved for leave to file a "third amendment" (actually a second amendment, as noted above) in order to add certain defendants, including Mr. Echols, to this action. The plaintiff's motion was unopposed, and this Court granted leave to file the "third" amendment on February 17, 1984.

On February 28, 1984, the REB defendants answered the complaint as amended through the second amendment, and the plaintiff moved for leave to file his Amendment in order to clarify and supplement the claims in his original complaint. In an order filed April 9, 1984, this Court granted leave to amend and denied the Cayman and REB defendants' motions to dismiss without prejudice to the filing of similar motions as to the complaint, as amended through the Amendment. Mr. Echols' motion to dismiss was, however, filed on the same date as this order.

Subsequently, the Cayman defendants filed a motion to dismiss the third count of the plaintiff's complaint, as amended, on May 21, 1984, and otherwise answered the Amendment on June 11, 1984. The plaintiff filed his response in opposition to the Cayman defendants' motion and to the motion of Mr. Echols. The REB defendants filed an answer to the Amendment on May 25, 1984.

Since the REB defendants' and Cayman defendants' initial motions to dismiss were denied by this Court, they have no continuing viability and will not be considered here. Mr. Echols' motion was not denied, however, and must be considered. Since this motion depends almost entirely on the REB defendants' motion, which in turn depends upon the Cayman defendants' motion, it is clear that these defendants' arguments will be rather fully, albeit indirectly, addressed.

## II. STANDARD OF REVIEW

█ In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the allegations of the complaint and all reasonable inferences from the facts alleged must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Brown v. Ivie*, 661 F.2d 62, 66 (5th Cir.1981). A complaint must not be dismissed unless it is shown that the "[p]laintiff can prove no set of facts in support of his claim, which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, the movant sustains a very high burden in cases under Rule 12(b)(6).

## III. MOTION TO DISMISS COUNT THREE

█ Count three of the complaint, as amended, seeks damages for an alleged violation of section 17(a) of the Securities Act. Both the Cayman defendants and Mr. Echols have moved to dismiss on the ground that no implied private right of action exists under section 17(a). This Court has consistently held that the defendants' position is correct. *In re North American Acceptance Corp. Securities Cases*, 513 F.Supp. 608, 618 (N.D.Ga.1981); *Gunter v. Hutcheson*, 433 F.Supp. 42, 44–

47 (N.D.Ga.1977), *reh'g granted,* 492 F.Supp. 546 (1980). The Eleventh Circuit Court of Appeals has not disagreed. *Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 675 F.2d 1169, 1172 & n. 1 (11th Cir.1982). Accordingly, count three of the plaintiff's complaint, as amended, must be dismissed on this ground.

## IV. MR. ECHOLS' MOTION TO DISMISS

### A. *Rule 9(b):*

Mr. Echols contends that the claims of the complaint against him fall short of the Rule 9(b) requirement that "in all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity," and therefore the complaint should be dismissed. For reasons discussed in full below, the Court holds that certain of the plaintiff's claims must be dismissed against Mr. Echols.

In the present dispute, the plaintiff alleges that Mr. Echols is responsible as director and controlling person for the actions of "Defendant REB."[4] Thus, the relevant question is whether the plaintiff has adequately pleaded the elements and circumstances of fraud as allegedly committed by Defendant REB, and whether this sufficiently includes Mr. Echols for Rule 9(b) purposes.[5]

Rule 9(b) requires the pleader to include all the elements of fraud and to specifically aver the circumstances constituting fraud. This Rule applies to securities transactions, generally requiring inclusion of the "time, place, and content of the ... misrepresentations, the facts misrepresented, and the nature of the detrimental reliance, with some leniency allowed for complex issues or transactions covering a long period of time." *Elster v. Alexander,* 75 F.R.D. 458, 461 (N.D.Ga.1977). The general rule is that such pleadings cannot be based "on information and belief." 2A

J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9–26 (2d ed. 1984). The rule regarding "information and belief" is "relaxed as to matters peculiarly within the adverse parties' knowledge, [but then] the allegations must ... be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). Thus, allegations that are wholly conclusory in nature will not suffice in a securities action. *Id.* at 606.

The three essential purposes underlying the specificity required by Rule 9(b) are well established:

> The first is to inhibit the filing of a complaint as a pretext for discovery of unknown wrongs .... The second aim is to protect potential defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude .... Finally, Rule 9(b) serves to ensure that allegations of fraud are concrete and particularized enough to give notice to the defendants of what conduct is complained of to enable the defendants to prepare a defense to such claim of misconduct.

*Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977) (citations omitted); *see generally* Note, *Pleading Securities Fraud Claims with Particularity Under Rule 9(b),* 97 Harv.L.Rev. 1432 (1984).

The particularity requirement of Rule 9(b) does not abrogate the requirement of Fed.R.Civ.P. 8(a) & (e) that the complaint set forth a short and plain statement of the claim, and that each averment should be "simple, concise, and direct." Consequently, Rule 9(b) does not justify the pleading of detailed evidentiary matter. 2A J. Moore, *supra,* at 9–28 to 30. The two rules must be reconciled.

---

**4.** Defendant REB is defined in the complaint as "Defendant REB Petroleum Company, formerly REBPET, Inc., its successors and assigns ... formerly the general partner of three Texas limited partnerships known as REBPET, Ltd. 1976–2, REBPET 1977–1 Drilling Program and REB-

PET Partners, Ltd. 1978." Complaint ¶ 6; also see Amendment ¶ 6.

**5.** Since Mr. Echols is not alleged to be a director of any of the Cayman defendants, this inquiry must be limited to allegations pertaining to the pre-exchange offer transactions.

The Court recognizes that the instant action involves multiple defendants and transactions and transpired during the course of several years. In addition, some of the facts in a securities case allegedly involving fraudulent misrepresentation may be difficult to uncover or particularly within the knowledge of the adverse party. The Court further recognizes that one express purpose of the plaintiff's Amendment was to clarify some of the areas alleged to be insufficiently particular.[6]

Mr. Echols further argues that Rule 9(b) entitles him to know which allegations of fraud apply to him individually.[7] In support of this argument he cites a rule enunciated primarily by the lower courts of the Second Circuit:[8] "The complaint may not rely on blanket references to acts of all named defendants, since each is entitled to be apprised of the specific circumstances surrounding the conduct for which he is charged with fraud." *Helfant v. Louisiana & Southern Life Insurance Co.*, 459 F.Supp. 720, 726 (E.D.N.Y.1978), *reh'g granted*, 82 F.R.D. 53 (1979) (defendants included five corporations and certain officers, directors, and shareholders of two of these corporations).

This rule seems correctly applied in cases such as those in which it originated, where the plaintiff levels blanket allegations of fraud at multiple corporate or individual defendants without specifying the actions or circumstances for which he seeks to have these participants held liable. To hold otherwise would contravene the rationales for the application of Rule 9(b) noted above, in particular to provide the defendant with notice of the alleged misconduct so as to enable him to prepare a defense.

The instant case, however, involves a single defendant whose potential liability derives from misconduct alleged to have been committed by the corporation of which he was director and controlling person. In the case of a small corporation, where the boundaries between the corporate entity and the individual director are often permeable, it cannot be said as a general rule that allegations sufficiently directed against the corporate entity fail to detail, for purposes of Rule 9(b), the actions of its director with sufficient particularity. Nor does this result contravene the rationales for Rule 9(b).

(1) Count I: The plaintiff alleges that Mr. Echols is liable under section 10(b) of the Exchange Act and rule 10b–5 promulgated thereunder. The basic elements of a cause of action under rule 10b–5 that must be alleged here are well settled:

(1) Defendants used the mails, or an instrumentality of interstate commerce, in connection with the purchase or sale of a security; (2) that in connection with the purchase or sale, defendants employed a device, scheme, or artifice to defraud, or made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements in light of the circumstances under which they were made not misleading, or engaged in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person; (3) that the defendants had the requisite 'scienter'; (4) that the plaintiff relied on the statements of defendant; and (5) that plaintiff suffered damage as a result.

*Haven Industries, Inc.,* 462 F.Supp. 172, 183 (S.D.N.Y.1978) (defendant brokerage firm's motion to dismiss granted because, among other things, complaint " 'in no way attempts to delineate among the defendants [including other brokerage firms] ... [regarding] their participation or responsibilities in the activities which are the subject of this suit' "); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 524 (S.D.N.Y.1977) ("plaintiff cannot merely rely on the blanket allegation that unnamed 'defendants' concealed material facts").

---

**6.** See the memorandum of law in support of plaintiff's motion to file Amendment, filed February 28, 1984, at 2–3.

**7.** See Cayman defendants' Brief in support of motion to dismiss and motion for more definite statement, filed September 9, 1983, at 7–8.

**8.** *E.g., Stromfield v. Great Atlantic & Pacific Tea Co.,* 484 F.Supp. 1264, 1270 (S.D.N.Y.1980) (reference to "Hartford defendants" insufficiently specific where Hartford defendants consist of a dozen foundations and individuals); *In re*

*Rosenbloom v. Adams, Scott & Conway, Inc.*, 521 F.Supp. 372, 379 (S.D.N.Y.1981); *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976); 15 U.S.C.A. § 78j(b) (West 1981); 17 C.F.R. § 240.10b–5 (1983). To further evaluate the sufficiency of the complaint under Rule 9(b), this Court has stated that the circumstances alleged in the complaint must include "with some factual specificity the financial statements and documents constituting the fraud." *Elster*, 75 F.R.D. at 461.

This Court finds that the plaintiff has sufficiently alleged the above-stated elements and circumstances of a rule 10b–5 cause of action against the REB defendant.[9] The plaintiff has not sufficiently alleged, however, all of the elements of this cause of action against Mr. Echols. It is necessary to allege "scienter"[10] in order to establish a cause of action under rule 10b–5, *Hochfelder*, 425 U.S. at 193, 96 S.Ct. at 1380, and the plaintiff does not allege scienter on the part of Mr. Echols. Accordingly, the Court must grant Mr. Echols' motion to dismiss on this ground. The plaintiff may have leave to amend his complaint in order to rectify this deficiency if he so chooses.

■ (2) Count IV: The plaintiff claims that Mr. Echols is liable to him under section 12(1) of the Securities Act. Section 12(1) renders liable any person who "offers or sells a security in violation of section 77e of this title" (prohibiting the offering to sell or selling of unregistered securities). The plaintiff also claims that Mr. Echols is liable under section 5(a) of the Securities Act. Section 5(a) concerns the sale or delivery after sale of unregistered securities in interstate commerce or the mails. Mr. Echols argues that these allegations are defective under Rule 9(b) and should be dismissed. Unlike the cause of action under section 10(b), which requires the pleading of scienter, however, section 12(1) provides for very nearly strict liability. *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154,

1177 (S.D.N.Y.1974). Allegations of the sale of unregistered securities are sufficient here. *See Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 909 n. 9 (S.D.N.Y.1983) ([This] cause of action ... is not founded on fraud and, therefore, is not within Rule 9(b)'s particularity requirement.). Section 5(a) is similar in this respect. *See Kistner v. United States*, 332 F.2d 978, 981 (8th Cir.1964). Thus, dismissal of the plaintiff's section 5(a) claim cannot be ordered on this ground; however, the plaintiff's section 12(1) claim is dismissed on another ground, discussed below.

■ (3) Counts V & VII (Georgia law): The plaintiff has alleged violations of provisions of the Georgia Securities Act of 1973 that are closely related to the federal securities laws also alleged to have been violated. As enumerated in the plaintiff's complaint, as amended, these allegations are inspecific. Assuming the plaintiff intends to allege a violation of O.C.G.A. § 10–5–12(a)(2) (1982), which closely tracks the language of rule 10b–5, his complaint is deficient under Rule 9(b) for the same reasons his rule 10b–5 allegations are deficient. An intent to defraud must be shown in alleging a violation of O.C.G.A. § 10–5–12(a)(2) (1982). *See Curtis v. State*, 102 Ga.App. 790, 793, 118 S.E.2d 264, 268 (1960). The same objections must be raised regarding the plaintiff's common law fraud allegations under O.C.G.A. § 51–6–1 et seq. (1982). An intent to defraud must be shown to state a claim for common law fraud under Georgia law. *See, e.g., Brown v. Ragsdale Motor Co.*, 65 Ga.App. 727, 730, 16 S.E.2d 176, 178 (1941). The plaintiff's allegations of liability under the Uniform Limited Partnership Act, O.C.G.A. § 14–9–27 (1982), which statutory provision by its terms requires knowledge of the falsity in question, are similarly deficient.

Accordingly, Mr. Echols' motion to dismiss must be granted on this ground, with leave granted to the plaintiff to correct

---

**9.** See, for example, Amendment ¶¶ 17, 18, 25, 27–39, 41, 42, 45–47, 49–57, 59–62, Exhibit "A," and other relevant paragraphs of the complaint, as amended.

**10.** The *Hochfelder* Court defined "scienter" in this context as "intent to deceive, manipulate, or defraud." *Hochfelder*, 425 U.S. at 193, 96 S.Ct. at 1380.

these deficiencies in an amended complaint if he so chooses.

■■■ (4) Counts VI (Texas law): The plaintiff's claim against Mr. Echols under the Texas "blue sky" law, Tex.Rev.Civ. Stat.Ann. art. 581–7 & –33 A(2) (Vernon 1964 & Supp.1984),[11] is not defective under Rule 9(b), as the defendant alleges. The statute in pertinent part provides: "a person [seller] is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and *in the exercise of reasonable care* could not have known, of the untruth or omission." *Id.* at 581–33 A(2) (emphasis added). That the plaintiff need not allege scienter under Texas law is indicated by the availability to the defendant of a reasonable care[12] defense. The reasonable care defense is conceptually inconsistent with the scienter requirement: "where a plaintiff [proceeding under this section] can prove only negligence, without intentional or reckless conduct, the defendant can prevail if he can establish his own exercise of due care. Scienter thus is not required ..." *American General Insurance Co. v. Equitable General Corp.,* 493 F.Supp. 721, 749 & n. 55 (E.D.Va.1980) (referring to identical language of Tex.Code Ann. § 581–33(B) regarding buyer's liability). Accordingly, the plaintiff's Texas law claim must survive Mr. Echols' Rule 9(b) challenge.

### B. *Statutes of limitations:*

As a general matter, Mr. Echols alleges that all of the plaintiff's federal securities law claims are barred by the applicable statutes of limitations. The basis for this position is twofold. First, Mr. Echols believes that these securities laws claims should be dismissed for failure to plead compliance with the statute of limitations as an element of the plaintiff's case. Second, Mr. Echols believes that the facts alleged in the plaintiff's complaint show that the last securities purchase occurred well

before the applicable limitations period began to run. For reasons that will be discussed in detail below, the Court finds both these arguments to be without merit.

■■■■ (1) Count I: The plaintiff's claims under this count are brought pursuant to section 10(b) of the Securities Exchange Act and rule 10b–5. Neither section 10(b) nor rule 10b–5 expressly creates a private right of action for damages and, therefore, there is no federally mandated period of limitations within which a private litigant must bring suit for violations thereof. It is well settled under these circumstances that the federal court must apply "the period which the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal securities laws." *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 891 (5th Cir.1979). The state statute of limitations thus applied constitutes an affirmative defense under Fed.R.Civ.P. 8(c) rather than a substantive element of an Exchange Act claim. *In re Longhorn Securities Litigation,* 573 F.Supp. 255, 266 (W.D.Okla.1983).

■■■ Mr. Echols also argues that this claim should be barred because the state statute of limitations to be applied by the court in this action has expired. Here the defendant asserts that the applicable statute of limitations is the two-year limitations period provided in the state's "blue sky" law, the Georgia Securities Act of 1973, O.C.G.A. § 10–5–14(c) (1982). The analysis to be applied by the federal court in this situation is thoughtfully set forth in *Diamond v. Lamotte,* 709 F.2d 1419, 1421–24 (11th Cir.1983). First the court must characterize the action as if it had been brought in a Georgia court, comparing the elements of the federal cause of action and the purposes of those elements to the elements and purposes of the most closely analogous

---

**11.** Article 581–7 is analogous to § 5 of the Securities Act, the basic registration provision. Article 581–33 contains the civil liabilities provision for violation of article 581–7.

**12.** The reasonable care defense is also referred to as the "due diligence" defense by the legislative history provided in the Texas Code. *Id.* comment to 1977 amendment to § 33 A(2), at 59 (Supp.1984).

action under state law. This characterization determines which concomitant limitations period is to be applied, unless the characterization or limitations period is in some way inconsistent with federal policy. *Id.* at 1422.

 As the *Diamond* court observed, the language in Georgia's blue sky law, O.C.G.A. § 10–5–12(2) (1982), provides a cause of action closely analogous to that provided by rule 10b–5, and neither the cause of action nor its limitations period is inconsistent with federal policy. *Id.* at 1423; *Kennedy v. Tallant*, 710 F.2d 711, 716 (11th Cir.1983). Under other circumstances it might be appropriate to employ, as the plaintiff contends the Court should do here, the four-year statute of limitations associated with Georgia's common law fraud statute. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 894 (5th Cir.1979) (applying four-year limitations period) ("[W]e find determinative the fact that McNeal seeks damages against a broker on account of alleged churning of his account, and does not seek rescission from an actual purchaser or seller of securities."). When the plaintiff seeks rescission, damages, and an accounting against the actual sellers of the securities, however, the Georgia blue sky statute is the most closely analogous law, and its associated statute of limitations must be applied. *See Diamond*, 709 F.2d at 1421–24; *Mooney v. Tallant*, 397 F.Supp. 680, 683–84 (N.D.Ga.1975). Accordingly, this Court holds that for purposes of the plaintiff's suit against the REB defendants, the actual sellers of the securities in question, Georgia's two-year statute of limitations applies.

The Court could not at this time foreclose the plaintiff from proceeding to trial based on a statute of limitations defense, if he were to file an amended complaint regarding this claim, however, because the plaintiff correctly asserts that the limitations period has been tolled by the doctrine of equitable tolling. In addition, the plaintiff alleges that the defendants engaged in a continuing scheme of fraud by selling him securities in an integrated offering that ended in September of 1981; thus, even under the two-year limitations period, the plaintiff's claim, filed on August 30, 1982, was timely.

(a) *Equitable tolling doctrine:*

 Although the limitations period to be applied is a matter of state law, the time at which the action accrues and the statute begins to run is a question of federal law. *Kennedy*, 710 F.2d at 716. The period of limitations applicable to implied causes of action under rule 10b–5 begins to run at the point when the plaintiff had actual knowledge of the alleged violations or notice of facts, which in the exercise of reasonable diligence, would lead to actual knowledge. *McNeal*, 598 F.2d at 893 n. 11; *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8–9 (5th Cir.1967). Due diligence in discovering the fraud must be shown when it has not been alleged that the defendant has actively concealed the fraud. *E.g., Robertson v. Seidman & Seidman*, 609 F.2d 583, 593 (2d Cir.1979). Furthermore, in the event that a fiduciary relationship was present, the standard of reasonableness or evidence of fraudulent concealment against which the plaintiff's diligence is measured is lessened. *Muscat*, 386 F.2d at 9. Questions regarding due diligence are especially well suited for a jury's consideration. *Kennedy*, 710 F.2d at 717.

 In the context of the defendant's motion to dismiss, the allegations of the Amendment and all reasonable inferences therefrom must be taken as true. The plaintiff alleges that he exercised due diligence in making investments in the limited partnerships. These actions included contacting the REB defendants' technical references and submitting the prospectus and limited partnership agreements to review and discussion by his financial and business consultants. The plaintiff further alleges that he lacked actual knowledge or any notice of the fraud until March of 1982. Amendment ¶¶ 58–64. Although the plaintiff's original complaint states that he did not read the prospectus and limited partnership agreements, Complaint, filed August 30, 1982, at ¶ 121, it is arguable that the plaintiff's relationship with the repre-

sentatives of the REB defendants was, as he asserts, one of trust or special confidence, thereby lessening his duty to investigate the facts. Beyond this consideration, however, the defendant's certainty that failure to read these documents clearly demonstrates lack of diligence seems somewhat misguided. The question of diligence relates to the discovery of fraudulent misconduct or misrepresentations, and these would not necessarily be apparent on the face of the documents in question. In addition, the plaintiff alleges a lack of reasonable access to information that would have uncovered the misrepresentations and grossly negligent accounting practices concealing the fraud. These facts as alleged can be interpreted to show reasonable diligence, and this Court cannot, as a matter of law, refuse to apply the equitable tolling doctrine to the limitations defense put forward by the defendant.

(b) *Integrated offering:*

■ The basis for the plaintiff's contention that the sale of securities was continuous and thus an integrated offering is essentially his showing that both his initial purchase of the limited partnership interests and his subsequent capital contributions were securities purchases under the Exchange Act and the Securities Act. Under this theory, the statute of limitations did not begin to run until the last purchase of a security the plaintiff made.

As support for his contention that each capital contribution constituted the purchase of a security, the plaintiff relies primarily on the "investment decision" test outlined by the Seventh Circuit in *Goodman v. Epstein,* 582 F.2d 388 (7th Cir. 1978), *cert. denied,* 44 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). In *Goodman,* a purported rule 10b–5 violation arose out of the sale of limited partnership interests in a real estate development operation. On appeal from a jury trial, the plaintiffs argued that the lower court had erred in instructing the jury that the "purchase" of securities occurred only when each plaintiff was initially obligated to acquire the security under the terms of the limited partnership agreements, i.e., at the time of execution of these agreements, and not when the plaintiffs responded to subsequent calls for capital contributions. This instruction precluded the plaintiff's recovery because the relevant state statute of limitations period had expired subsequent to the date of execution of these agreements.

The court of appeals remanded the case for a new trial, noting that a liberal construction of the securities laws was necessary in order to effectuate their remedial purpose. *Id.* at 410. The court held that the term "purchase" should include the plaintiffs' subsequent capital contributions pursuant to the partnership agreement because each contribution required an "investment decision":

> The parties clearly envisioned an ongoing relationship under the Agreement with the management making all of the decisions affecting the basic value of the enterprise and its chances of progressing toward its advertised goal .... Whether the facts were such that any remedy to alter the plaintiffs' obligations under the agreement would have been available to them was, of course, to be determined by the trier of fact in this action. If not, the undisclosed facts were not material, and failure to disclose them would not be actionable. But so long as an investment decision remained to be made upon any possible state of facts, the nondisclosure was in connection with the purchase of a security [for section 10(b) and rule 10b–5 purposes].

*Id.* at 412–13; *accord Ingenito,* 376 F.Supp. at 1181–82. This Court finds the reasoning of the *Goodman* opinion persuasive and adopts its result as governing the facts in the case at bar.

Also relevant to the question of integration are the cases considering whether an offering is to be considered nonpublic for purposes of the registration exemption under section 4(2) of the Securities Act, 15 U.S.C.A. § 77d(2) (West 1981). The Securities and Exchange Commission lists five factors to consider when determining whether an offering is integrated: (1) whether the offerings were part of a single plan of financing, (2) whether the offerings involved issuance of the same class of secu-

rities, (3) whether the offerings were made at or about the same time, (4) whether the same type of consideration was received, and (5) whether the offerings were made for the same general purpose. 1 Fed.Sec. L.Rep. (CCH) ¶ 2780 (1973); *Securities & Exchange Commission v. Murphy,* 626 F.2d 633, 645 (9th Cir.1980).

Under this analysis, the sales of the limited partnership can arguably be viewed as integrated, especially in view of factors (2), (4), and (5). The securities were all limited partnership interests, the consideration received was of the same type, and the offerings were made for the same general purpose of funding hydrocarbon developments. Although the plaintiff does not advert to the first factor, the financing involved here was part of an overall plan for financing the REB defendants' operations. Although the offerings were distinctly separated in time, the reasoning of the *Murphy* court is persuasive: the time factor is heavily outweighed by the remaining factors, which militate in favor of a finding of integration. 626 F.2d at 646.

The plaintiff also alleges that certain amendments to the limited partnership agreements made a significant change in those investments and that such amendments are also actionable under section 10(b) and rule 10b–5. In support of this allegation, the plaintiff cites *Keys v. Wolfe,* 709 F.2d 413 (5th Cir.1983), which involved investment contracts pertaining to pecan orchards operated by a corporate grower. In this case, the appeals court held that the test determining whether a particular transaction meets the requirement of section 10(b) and rule 10b–5 that it be "in connection with a purchase or sale" is met whenever there has been a voluntary amendment to an existing security if there has been "such a significant change in the

nature of the investment or in the investment risks as to amount to a new investment." *Id.* at 416–17. Accepting the plaintiff's allegations as true, as well as all factual inferences to be derived therefrom, it must be said that the enumerated capital contributions and amendments adequately support the plaintiff's allegation that the ongoing relationship of the parties involved an integrated offering.

The plaintiff alleges that the defendants made untrue representations of material facts and otherwise engaged in fraudulent conduct from the time of his initial purchase until the date of his last capital contribution. If the series of investment decisions constituted an integrated offering under the *Goodman* framework, and the purportedly fraudulent concealment occurred throughout this period, then the date of the final capital contribution is the date on which the limitations period begins to run. *See Hill v. Der,* 521 F.Supp. 1370, 1386 (D.Del.1981) (under the *Goodman* doctrine the plaintiffs' rule 10b–5 claim accrued when final payments were made to the defendant on letters of credit); *Hill v. Equitable Trust Co.,* 562 F.Supp. 1324, 1339 (D.Del.1983). This date, September 1, 1981, is subject to revision upon the full development of the facts in this case.

(2) Counts II and IV: The plaintiff's second and fourth claims are for alleged violations of sections 12(2) and 12(1) of the Securities Act. Mr. Echols asserts that these claims are absolutely barred by their associated statute of limitations, section 13 of the Securities Act, 15 U.S.C.A. § 77m (West 1981).[13]

▮▮▮ While the defendant is correct in asserting that the statute of limitations must be pleaded as a substantive element of the plaintiff's Securities Acts claims,

---

**13.** This limitations statute in pertinent part provides:

> [n]o action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery *should have been made by the exercise of reasonable diligence,* or, if the action is to enforce a liability created under section 77*l*(1) of this

> title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale.
>
> *Id.*

*e.g., In re Longhorn Securities Litigation,* 573 F.Supp. at 266, the plaintiff has adequately so pleaded in his Amendment. Amendment ¶¶ 86 & 96.

█ Although the plaintiff argues that the rule articulated in *In re Home-Stake Production Co. Securities Litigation,* 76 F.R.D. 337, 344 (N.D.Okla.1975) permitting equitable tolling in this context should be controlling, that case involved fraud not only against the investors but against the courts and the government agencies. It may therefore constitute a special exception. *See Benoay v. Decker,* 517 F.Supp. 490, 491 (E.D.Mich.1981). This Court agrees with those courts which have held: "the statutory language requires the conclusion that Congress meant the bar to be absolute." *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1308 (9th Cir.1982); *Benoay,* 517 F.Supp. at 491; *accord Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283, 290 (W.D.N.Y. 1977).

█ In any case, given the Court's findings regarding the plaintiffs allegations of due diligence and an integrated offering, the plaintiff may be able to prove either that the fraud was discovered within the one-year limitations period or that the last purchase date of the securities falls within the three-year limitations period provided by the statute. Thus, the plaintiff's section 12(2) claim must survive the defendant's motion to dismiss.

█ The opposite result must obtain with respect to the plaintiff's section 12(1) claim. Claims under this section "must be brought *both* within one year of discovery (actual or constructive) *and* within three years after the security was bona fide offered to the public." *Ingenito,* 376 F.Supp. at 1173 (emphasis in original) (plaintiff's section 12(1) claim failed to show when security was *first* offered to the public). In the case at bar, since the earlier alternative date controls the date on which the limitations period commences, and the plaintiff's first purchase of a security occurred in October of 1976, Complaint ¶¶ 32(b) & 35, his section 12(1) claim must be dismissed as time-barred.

(3) Counts V & VII (Georgia Law): The fifth count alleges violations of the Georgia Securities Act of 1973, the Uniform Deceptive Trade Practices Act, and the Georgia Uniform Limited Partnership Act. Mr. Echols asserts that all these claims are barred by their respective statutes of limitations.

█ The statute of limitations governing the plaintiff's claim brought under O.C. G.A. § 10–5–12(a) of the Georgia Securities Act of 1973 provides in pertinent part that "[n]o person may sue under this section more than two years from the date of the contract for sale or sale, if there is no contract for sale." O.C.G.A. § 10–5–14(c) (1982). Under the integrated offering analysis discussed above, the plaintiff's integrated purchase ceased on September 1, 1981. Consequently, the plaintiff's claim under the Georgia Securities Act was timely filed.

█ The limitations period applicable to the plaintiff's claim brought under the Uniform Deceptive Trade Practices Act, specifically, O.C.G.A. § 10–1–372 (1982), is, as the parties assert, the four-year period applicable to injuries to personalty as stated in O.C.G.A. § 9–3–31 (1982), which provides: "[a]ctions for injuries to personalty shall be brought within four years after the right of action accrues." This claim will therefore be considered together with the common law fraud claim and the claim brought pursuant to the Georgia Uniform Limited Partnership Act, since the same statute of limitations applies. This limitations period is tolled by the effect of Georgia's fraud discovery rule, which provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C. G.A. § 9–3–96 (1982). The Georgia authorities imply a due diligence requirement in construing the statute: when "actual fraud is the gravamen of the action, ... the statute of limitations is tolled until the fraud is discovered or by reasonable dili-

gence should have been discovered." Such diligence may be to some extent excused when a confidential relationship existed between the parties. *Shipman v. Horizon Corp.*, 245 Ga. 805, 808, 267 S.E.2d 244, 245 (1980). Thus, this rule is analogous to the federal equitable tolling doctrine discussed above. For the reasons discussed in full above, the Court holds that the plaintiff's claims under Georgia law are not barred by their respective statutes of limitations.

■■■ (4) Count VI (Texas Law): The plaintiff further alleges violations of the Texas blue sky law. The statute of limitations applicable to this law provides that for violations of section 33 A(1), claims must be filed no more than three years after the sale. For violations of section 33 A(2), claims must be filed no more than "three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence; or (b) more than five years after the sale; ..." Tex.Rev.Civ.Stat.Ann. art. 581–33 H (Vernon 1964 & Supp.1984).

Under the integrated offering analysis, the plaintiff's claim under section 33A(1) was timely filed. In addition, because the plaintiff brought his claim under section 33A(2) within three years after purportedly discovering the fraud, and less than five years after the sale, the claims are not time barred.

### C. *Remaining grounds of Mr. Echols' motion to dismiss:*

■■■ Mr. Echols seeks to dismiss counts VIII, IX, and X, alleging breach of fiduciary duty, negligence, and breach of the limited partnership agreements, because they fail to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed.R.

Civ.P. 8(a). The objective of notice pleading under the Federal Rules is adequately met by the plaintiff's claims as stated. *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13 (2d ed. 1984). Consequently, dismissal cannot be ordered on these grounds.

### D. *Alternative motion to require posting of undertaking:*

■■■ Mr. Echols moves to have this Court require the plaintiff to post security for the payment of costs pursuant to section 11(e) of the Securities Act, 15 U.S.C.A. § 77k(e) (West 1981).[14] In resolving the question of whether to require such an undertaking, the prevailing standard is as follows: the defendants must show either that the plaintiff has brought the suit in bad faith or that the claim borders on the frivolous. *E.g., Straus v. Holiday Inns, Inc.*, 460 F.Supp. 729, 732–33 (S.D.N.Y. 1978). In addition, "it is only required that an *eventual* finding of bad faith or obvious lack of merit appear likely to the district court in view of the evidence before it." *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18 (9th Cir.1981) (emphasis added).

■■■ Mr. Echols has not alleged "bad faith" on the part of the plaintiff. Therefore, the only remaining consideration is whether it appears likely that the federal claims alleged against the defendant border on the frivolous. The defendant's reasons for contending that the plaintiff's claims lack merit are that these claims are barred by the operation of Rule 9(b) or by their respective statutes of limitations. In view of the Court's holdings on these questions, it cannot be said that an eventual finding of an obvious lack of merit is likely on these grounds. Accordingly, the defendant's request for the posting of an undertaking under section 11(e) is denied.

---

**14.** This statute states in pertinent part:

In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit ...

*Id.*

In summary, this Court holds:

(1) the motion of the Cayman defendants and Mr. Echols to dismiss count three of the complaint is GRANTED,

(2) Mr. Echols' motion to dismiss the plaintiff's claims under rule 10b–5, O.C. G.A. §§ 10–5–12(a)(2) & 51–6–1 *et seq.* (1982) is GRANTED, and leave to amend the complaint is hereby GRANTED the plaintiff with regard to these claims,

(3) Mr. Echols' motion to dismiss the plaintiff's claim under section 12(1) is GRANTED,

(4) Mr. Echols' motion to dismiss the plaintiff's claims under sections 5(a) and 12(2) of the Securities Act is DENIED,

(5) Mr. Echols' motion to dismiss the plaintiff's claims under O.C.G.A. §§ 10–1–372 & 14–9–1 *et seq.* (1982), Tex.Rev.Cir. Stat.Ann. art. 581–7 & 33 A(2) (Vernon 1964 & Supp.1984), and the claims for breach of fiduciary duty, negligence, and breach of the limited partnership agreements is DENIED, and

(6) Mr. Echols' alternative motion for the posting of an undertaking pursuant to section 11(e) of the Exchange Act is DENIED.