Edwin J. WALKER, Jr., George W. Hill, Jr., and Central Carolina Bank and Trust Company, N.A., Collectively as Executors of the Estate of John S. Hill, II, Plaintiffs,

v.

MONTCLAIRE HOUSING PARTNERS, Tricap Corporation, and Shelby J. Kaplan, Defendants and Counterclaimants,

v.

Stephen D. MOSES, A. Bruce Rozet, The Federal Savings and Loan Association, as Receiver for Frontier Federal Savings and Loan Association, The Federal Savings and Loan Association, as Receiver for Vernon Savings and Loan Association, FSA, and Thomas J. Kenan, as Trustee for CB Financial Corporation, Intervenors.

Civ. A. No. C–88–1134–D.

United States District Court,
M.D. North Carolina,
Durham Division.

April 18, 1990.

David A. Harlow, Donald S. Ingraham and James A. Thomas, Research Triangle Park, N.C., for plaintiffs.

Robert W. Spearman, Lisa M. Nieman and James K. Kuyk, Raleigh, N.C., for defendants and counterclaimants.

J. David Farren, Elizabeth F. Kuniholm, Michael Crowell and J. Jerome Hartzell, Raleigh, N.C., and Christine Cole–Biederman of Arter & Hadden, Dallas, Tex., for intervenors.

## MEMORANDUM OPINION

GORDON, Senior District Judge.

### I. *Procedural History*

Plaintiffs Edwin Walker, Jr., George Hill, Jr. and Central Carolina Bank and Trust Company, as the Executors of the estate of John S. Hill, II, filed this case on January 11, 1988, in Durham Superior Court against Defendants Montclaire Housing Partners ("Montclaire"), Tricap Corporation ("Tricap"), and Shelby J. Kaplan (collectively referred to as the "defendants" or "original defendants"). The Complaint alleges three causes of action under the North Carolina Securities Act relating to the decedent John Hill's purchase of 450 securities units in the Montclaire Housing Partners Limited Partnership for $450,-000.00. The first claim for relief seeks rescission of the purchase of the securities pursuant to section 78A–56(a)(1) on the grounds that the unregistered securities were not exempt from registration. The second claim is for rescission under section 78A–56(a)(2) based on allegations that the defendants made material misstatements or failed to state material facts pertinent to the sale of the securities. The third claim for relief is pursuant to section 78A–8 for the fraudulent sale of securities.

In their Answer, defendants denied that the sale violated North Carolina securities law. In addition, defendant Montclaire counterclaimed to recover payment of a promissory note in the face amount of $350,000.00 executed by John Hill, which was the final payment due under the Purchase Agreement for the 450 units of Montclaire that Hill purchased. In response to certain interrogatories, defendants stated that Montclaire had assigned the $350,-000.00 note to CB Financial Corporation as collateral for other obligations of Montclaire, and that CB Financial may have, in turn, assigned the note to Frontier Savings and Loan Association ("Frontier") and/or Vernon Savings and Loan Association, FSA ("Vernon").

Thereafter, Steven Moses, A. Bruce Rozet, Frontier, The Federal Savings and Loan Association ("FSLIC") (as receiver for Vernon), and Thomas Kenan (as Trustee in Bankruptcy for CB Financial Corporation) (referred to collectively as "the intervenors"), intervened in this action in October 1988, asserting interests in the note. In December 1988, Intervenor FSLIC removed the case to this court.[1]

This matter is before the court on the motions of plaintiffs and original defendants for summary judgment filed in this court on July 14, 1989. Intervenors Moses, Rozet, and Kenan (as Trustee in Bankruptcy) joined in original defendants' motion for summary judgment. Intervenor FSLIC also filed a motion for summary judgment asking the court to hold that Hill's estate is obligated to make payment on the promissory note, without regard to original defendants' liability, and that plaintiffs are not entitled to rescind the transaction. That motion will not be considered at this time, however, in accordance with the court's order of September 7, 1989.

### II. *Factual Background*

Montclaire is a California based limited partnership formed to invest in four other limited partnerships, each of which owns and operates a government assisted apart-

---

1. FSLIC was later appointed as receiver for Frontier, and in February 1989, became substi-
tute for Frontier in this litigation.

ment complex in the Washington, D.C. area. Shelby Kaplan is the individual general partner of Montclaire and Tricap is the corporate general partner of Montclaire. Kaplan owns 100 percent of the stock of Tricap.

In the fall of 1985, Marvin Stephenson, a Durham broker, contacted Kaplan and informed her that John Hill, a client of his, wished to reserve a tax shelter investment. Kaplan advised Stephenson that she was putting together the Montclaire offering, and in the course of several weeks, made arrangements to provide an investment for Hill that would offer him certain tax benefits. Stephenson Deposition, at 38. Negotiations later ensued between Kaplan and Hill, through Stephenson, during which the terms of Hill's investment in Montclaire were reached. *Id.* at 58–87.

Mr. Hill executed a Subscription Agreement for the Montclaire offering on October 3, 1985, and delivered it to Stephenson to hold pending his final decision. *Id.* at 92–95, Exhibit 12. Hill wanted to see a prospectus prior to authorizing payments to Montclaire, but Kaplan maintained such a condition was unacceptable. This was because the proposed Offering Memorandum Montclaire was preparing, pursuant to which it would sell subsequent limited partnership interests, contained special provisions describing Hill's investment. Since only one Offering Memorandum was to govern the project, the Memorandum would be inadequate if Hill chose not to participate.[2] *Id.* at Exhibit 11; Kaplan Affidavit at § 11.

Despite the lack of a prospectus, Hill eventually elected to purchase the securities, and became the initial investor in the Montclaire Partnership. As part of the purchase of the securities, Hill paid Montclaire $60,000.00 sometime in late October or early November 1985. Hill also executed two promissory notes, one for $40,000.00 (which was paid about eight months after the initial payment), and one for

$350,000.00 (which is the subject of the original defendants' counterclaims).

Hill received the Offering Memorandum about a month after he invested in the securities. It concerned the offering of similar interests in the same limited partnership to other investors, and was the only such memorandum prepared for the Montclaire securities. According to the Offering Memorandum, Hill was the sole "Preliminary Limited Partner" admitted to the Partnership pursuant to the "Preliminary Offering" of $450,000 of "Preliminary Units" which commenced September 1, 1985 and ended November 1, 1985. Offering Memorandum, at xiii.

The Offering Memorandum was directed towards prospective "1985 Limited Partners," and distinguished the offering made pursuant to it from the "Preliminary Offering" by which Hill became a partner. Five other North Carolina residents were offered Montclaire securities through the Offering Memorandum, and became limited partners pursuant to the $3,100,000 offering that commenced November 1, 1985, and terminated December 15, 1985. *See* Offering Memorandum, at i, ii, xi, xii.

John Hill died on March 14, 1987. On July 1, 1987, payment of the $350,000.00 promissory note came due. Hill's estate was provided with two extensions of time to pay the note, but never paid the note. In early 1988, the executors of Hill's estate filed suit for rescission of the purchase of the Montclaire securities.

### III. *Discussion*

#### A. The Summary Judgment Standard of Fed.R.Civ.P. 56

Rule 56 of the Federal Rules of Civil Procedure provides the standard for determining the motions before the court:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

**2.** In an October 16, 1985 letter to Hill, Stephenson stated that Kaplan needed a final decision from Hill concerning his purchase because the Offering Memorandum was to go to the printers on October 18, and that although Montclaire desired Hill's participation, "the total partnership cannot be compromised by" Hill's interest. Stephenson Deposition, Exhibit 11.

moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment has the "burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A fact issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the only conflict between the parties concerns the legal consequence of undisputed facts, however, summary judgment is clearly appropriate. *See Odom v. Tripp*, 575 F.Supp. 1491, 1492 (E.D.Mo.1983); *see also* Wright, Miller & Kane, Federal Practice and Procedure § 2725 at 79–82 (2d ed. 1983).

B. Statute of Limitations Issue

■ Plaintiffs seek rescission and money damages under the North Carolina Securities Act, Chapter 78A. *See* N.C.Gen.Stat. §§ 78A–1, *et seq.* Claims brought under Chapter 78A are governed by the time limitation set out in N.C.Gen.Stat. § 78A–56(f) (1985), which provides that "no person may sue under this section more than two years after the sale or contract of sale." The contract of sale was signed by John Hill on October 3, 1985, and the check for the first installment of payments under the agreement was received by Montclaire sometime in early November 1985. Plaintiffs filed their complaint on January 11, 1988, more than two years after the date of sale.

Plaintiffs argue that because Hill died on March 14, 1987, the running of the two year statute of limitation set out in section 78A–56(f) was tolled for one year by N.C. Gen.Stat. § 1–22 (1983). Section 1–22 states in pertinent part:

> If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his personal representative or collector after the expiration of that time, and within one year from his death.

Although plaintiffs clearly meet the requirements of section 1–22, defendants nonetheless argue that it is not applicable and fails to toll the statute of limitation under the North Carolina Securities Act.

The crux of defendants' argument is that section 78A–56(f) constitutes a statute of repose, which may not be tolled under any circumstance, and not a statute of limitation, which is subject to tolling. The North Carolina Supreme Court has stated that a statute of limitation runs from the time of injury, and serves to limit the time within which an action may be commenced after the cause of action accrues; a statute of repose differs in that it is not measured from the time of injury, but often tends to run from the last act of the defendant giving rise to the claim or from some substantial service rendered by defendant. *Trustees of Rowan Technical College v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 234 n. 3, 328 S.E.2d 274, 276–77 n. 3 (1985). The resulting difference between the two types of limitations is that "repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985). If the action is not brought within the period specified under a statute of repose, the plaintiff literally has no cause of action. *Boudreau v. Baughman*, 322 N.C. 331, 341, 368 S.E.2d 849, 857 (1988).

Defendants argue that N.C.Gen.Stat. § 78A–56(f) is a statute of repose because it begins to run at a time which is not connected to the accrual of the cause of action, in this case, the sale of the securities. They also assert the principle that when a statute creating a right of action sets a time limitation, that limitation is actually a condition precedent of the action. *See Bolick v. American Barmag Corp.*, 306 N.C. 364, 369, 293 S.E.2d 415, 419 (1982). Defendants contend that because section 78A–56(f) is part of the North Carolina Securities Act, compliance with the limitation is a condition precedent to a securities action.

Though defendants' arguments are not without merit, this court disagrees with the assertion that N.C.Gen.Stat. § 1–22 cannot

operate to toll section 78A–56(f) of the North Carolina Securities Act, and does so for the following reasons. First, although the North Carolina Supreme Court has considered some of the factors listed above when discussing statutes of repose, the presence of those factors will not always mandate a determination that a statute is one of repose. *See Pyco Supply Co. v. American Centennial Ins.*, 321 N.C. 435, 441, 364 S.E.2d 380, 384 (1988) (reversing the Court of Appeals' holding that the limitations period for actions on payment bonds is a statute of repose, and refusing to decide that issue).

Second, the North Carolina Supreme Court has designated only the limitations periods for certain products liability, professional malpractice, and architectural and construction defect statutes as "statutes of repose." [3] In those cases it was clear that the legislature, for reasons of policy, intended the limitation period to serve as an absolute "outer limit" or cap on liability. *See Black*, 312 N.C. at 631–37, 325 S.E.2d at 473–77 (outer limit in response to "malpractice crisis"); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 427–28, 302 S.E.2d 868, 872–73 (1983) (outside limit for architectural defect claims). There is no evidence of such intention with regard to section 78A–56(f). [4]

Third, the North Carolina Securities Act's limitation period found in section 78A–56(f) has consistently been referred to as a "statute of limitation." *See Bizzell v. Hemingway*, 548 F.2d 505, 508 (4th Cir.

1977); *Waterman v. Alta Verde Industries, Inc.*, 643 F.Supp. 797, 808 (E.D.N.C. 1986); *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342, 347 (M.D.N.C.1984). The North Carolina courts have never called section 78A–56(f) a "statute of repose."

Finally, this court notes *Miller v. Merrill Lynch, Pierce, Fenner & Smith*, 572 F.Supp. 1180, 1186 (N.D.Ga.1983), in which the court stated that the limitation period of the Georgia Securities Act could be tolled by a provision in the Georgia General Statutes that provides that a statute of limitation is tolled until an estate becomes represented. The securities limitation provision at issue there was identical to the one in North Carolina, and the tolling provision applied in *Miller* operated like North Carolina's one year tolling statute in that it gave an estate additional time to bring suit in favor of the decedent and was *not* part of the state securities act. *See* O.C.G.A. § 10–5–14(c) (effective until April 1, 1989); O.C.G.A. § 9–3–92 (1989).

Without clear direction from a North Carolina court on this issue, this court refuses to read N.C.Gen.Stat. § 78A–56(f) as a statute of repose such that it could not be tolled by N.C.Gen.Stat. § 1–22. It is concluded that the two year statute of limitations found in the North Carolina Securities Act was tolled by operation of section 1–22 because plaintiffs brought their claim within the one year extension provided by that section. Defendants' motion for summary

---

**3.** *See Bolick*, 306 N.C. at 366–70, 293 S.E.2d at 418–19 (products liability statute); *Black*, 312 N.C. at 633, 325 S.E.2d at 475 (professional malpractice statute); *Trustees of Rowan Technical College*, 313 N.C. at 234 n. 3, 328 S.E.2d at 276–77 n. 3 (architectural and construction defect statutes).

**4.** The intention of the legislature to create a statute of repose has been evidenced by placing an "outer limit" on liability, which begins to run upon the last act of the defendant. This differs from an initial lesser limitation period that also covers the action and often begins to run upon the injury (or discovery of the injury) to the plaintiff. In *Black*, the court noted that "outer limits" were placed on malpractice liability by N.C.Gen.Stat. 1–15(c). One such outer limit is evidenced by an initial limitation followed by the phrase, "but, *in no event* may an action be

commenced more than 10 years from the last act of the defendant." N.C.Gen.Stat. § 1–15(c) (1983) (emphasis added).

For a case dealing with this issue as it relates to state securities law, *see Pucci v. Santi*, 711 F.Supp. 916, 922 (N.D.Ill.1989) (holding that the rule in Illinois is that statutory or common law tolling will apply to a cause of action unless the statute expressly states otherwise). The *Pucci* court noted that the most recent provision of the Illinois Securities Act had an express provision of repose, evidenced by an initial statute of limitation for actions brought after three years, followed by a definite statute of repose that read "but, *in no event* shall the period of limitation so extended be more than two years beyond the expiration of the three year period otherwise applicable." *Id.* at 921 (emphasis added).

judgment on that issue is therefore DE-NIED.

### C. Plaintiffs' First Claim For Relief Under Section 78A–56(a)(1)

■ Both plaintiffs and defendants have moved for summary judgment on plaintiffs' claim for rescission under section 78A–56(a)(1) of the North Carolina Securities Act. That section provides that any person who "offers or sells a security in violation of G.S. ... 78A–24 ... is liable to the person purchasing the security from him, who may sue at either law or in equity to recover the consideration paid for the security." N.C.Gen.Stat. § 78A–56(a)(1) (1985).

Section 78A–24 of the North Carolina Securities Act states that it is unlawful for any person to offer or sell any security in the state unless it is registered or the security or transaction is exempted under the securities act. *See* N.C.Gen.Stat. § 78A–24 (1985). Defendants admit that they did not register the Montclaire securities in the State of North Carolina.

Nevertheless, defendants contend that the Montclaire offerings were exempt transactions under section 78A–17(9) of the securities act, which exempts from registration "any transaction pursuant to an offer directed by the offeror to not more than 25 persons ... in this State during any period of 12 consecutive months." N.C.Gen.Stat. § 78A–17(9) (1985). That provision also permits the Administrator (the Secretary of State) to amend or further condition the exemption. *Id.* Pursuant to that authority, the Administrator adopted rule 06.1205 of the North Carolina Administrative Code. *See* 18 N.C.Admin. Code § 06.1205 (1984).

At the time of the Montclaire offering, Rule 06.1205(b) governed the filing requirements for real estate and tax shelters made in North Carolina pursuant to section 78A–17(9), and made solely in reliance upon a federal exemption from registration contained in section 4(2) of the Securities Act

of 1933. Defendants relied on the federal exemption found in section 4(2) of the 1933 Act, which exempts from registration "transactions by an issuer not involving any public offering." *See* 15 U.S.C. § 77d(2). Consequently, Rule 06.1205(b) applied to the Montclaire securities and the Hill transaction.[5]

Rule 06.1205(b)(5) requires that the issuer of the security file with the Administrator a statement signed by the issuer containing a summary of the proposed offering, not less than ten business days prior to any sale of securities to a resident of North Carolina. Thus, the governing regulations under the North Carolina Securities Act require a filing with the Securities Division of the North Carolina Secretary of State even for exempt transactions unless certain special circumstances are met. Defendants admit that they made no filings and provided no information to the Administrator. They nevertheless contend that they were not subject to the filing requirement because Rule 06.1205(b)(6) provides that no filing is necessary "if the security is offered to not more than five individuals who reside in this State."

In applying the summary judgment standard, a court must examine the record to determine whether there is an absence of dispute as to the facts material to a registration violation. *S.E.C. v. Murphy*, 626 F.2d 633, 640 (9th Cir.1980). Here there is no dispute as to the material facts. It is certain that defendants offered certain Montclaire securities to Hill and five other North Carolina residents. Defendants, however, contend that the Hill offering was a distinct offering separate from the "second" offering made to the other five North Carolinians. Plaintiffs disagree and assert that the Hill offering must be "integrated" with the other five offers to constitute a total of six offers made of the same security. Integration would result in defendants' violation of the Code by failing to file notice, and would bar the Montclaire

---

5. Both parties agree that section 06.1205(b) applies. *See* Defendants' Response Memo., at 9; Plaintiffs' Response Memo., at 24.

transactions from exempt status under section 78A–17(9).[6]

The integration doctrine is a method used to combine two or more otherwise exempt securities sales into a single offering. It serves as a means of ensuring investor protection by preventing issuers from circumventing the registration requirements by claiming a combination of exemptions for a series of transactions that would otherwise comprise a single offering requiring registration. *See generally* T. Hazen, *The Law of Securities Regulation* § 4.29 (2d ed. 1990).

Despite the silence of the North Carolina Securities Act on the matter of integration, the application of the doctrine is appropriate in this case.[7] The North Carolina Administrative Code provisions that contain the Rules for limited offerings pursuant to the 78A–17(9) exemption are intimately connected to the federal exemptions, which are subject to the integration doctrine.[8] Indeed, the requirements under the Code for those seeking an exemption in North Carolina vary depending upon which *federal* exemption they rely. *See* 18 N.C.Admin. Code § 6.1205(a), (b). This relationship between the federal exemption and the Code requirements (including the Code requirement for filing if the security is offered to more than five residents) makes it apparent that the integration doctrine should be applied.

Whether purportedly separate offers should be integrated has been determined from a five factor test set out by the Securities and Exchange Commission. The five factors are: (1) whether the sales are part of a single plan of financing; (2) whether the sales involve the issuance of the same class of securities; (3) whether the sales have been made at or about the same time; (4) whether the same type of consideration is received; and (5) whether the sales are made for the same general purpose.[9]

In the present situation, Montclaire designated two kinds of limited partnership interests for the partnership. Hill was offered securities through a special arrangement with his broker and was classified as the sole "Preliminary Limited Partner;" the other North Carolina purchasers were "1985 Limited Partners" admitted pursuant to an offering about a month later. The fact that Hill was the sole offeree of a "special participant" interest however, proves unpersuasive when considered under the five integration factors, and will not avoid the conclusion that the offerings are essentially offerings of the same security. *See Doran v. Petroleum Management Corp.*, 545 F.2d 893, 901 n. 9 (5th Cir.1977).

The facts are clear that the offerings were part of a single plan of financing for the Montclaire apartments, as evidenced by

---

**6.** Plaintiffs also assert that defendants did not satisfy the requirements of Rule 6.1205(b) because Hill was not provided a legend that warned that the securities were being offered pursuant to a claim of exemption under North Carolina law and that the Administrator had not passed upon the accuracy of the information provided in the prospectus or disclosure statement. Although Hill did not receive a prospectus before his purchase, there is a question of fact as to what information he did receive. After his purchase, Hill received the memorandum for the "second" offering of Montclaire securities, which contained a legend.

**7.** Although the court found no case where the integration doctrine was applied to the North Carolina Securities Act, it notes that integration is a long standing federal securities doctrine that has been incorporated in the blue sky laws of several states. The integration doctrine has been applied by federal courts in Georgia to cases brought under the Georgia Securities Act,

which itself does not specifically provide for integration. *See Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1377–79 (N.D.Ga.1984) (applying an integration of offerings analysis to a statute of limitations problem for claims brought under Georgia and Texas blue sky law); *Kennedy v. Tallant,* [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 95,779 (Oct. 22, 1976), *aff'd* 710 F.2d 711 (11th Cir.1983) (applying integration theory to claim under Georgia Securities Act).

**8.** Whether one offering can be integrated with another has often been addressed in the context of the private offering exemption of section 4(2), the federal provision upon which defendants rely.

**9.** These factors were set out in Securities Act Release No. 33–4552, 17 C.F.R. 231.4552 (Nov. 6, 1962), and are restated in Rule 502(a) of Regulation D, 17 C.F.R. § 230.502(a).

the fact that the second subsequent offering was contemplated at the time of the offering to Hill. *See Livens v. William D. Witter, Inc.*, 374 F.Supp. 1104, 1107 (D.Mass.1974) (absence of a single plan of financing shown by the fact that at the time of each offering, no subsequent offering was being considered); Sonnenblick, Parker & Selvers, SEC No-action letter (Jan. 1, 1986) (proposed offerings part of a single plan of financing where issuer anticipated the need for capital from both offerings to go forward with operations). The interrelationship of the two offerings is evident throughout the Offering Memorandum, and is also apparent from the fact that defendants would not publish the Offering Memorandum until they were sure Hill was a Preliminary Partner.[10]

The offerings had the same general purpose, which was to produce "the total capitalization of the partnership" for the purpose of investing as the principal limited partner in four other limited partnerships which own and operate low income housing units. Offering Memo at 5–7. Defendants nevertheless argue that the purposes were different because proceeds of the Preliminary Offering were used as seed money for the Partnership, while proceeds of the 1985 Units were for the general operational expenses of the Limited Partnership. Such a distinction between whether the proceeds of an offering act as "seed" money or working capital is insufficient to avoid integration. *See Laserfax, Inc.*, SEC No-action letter, Fed.Sec.L.Rep. (CCH) para. 78,136 (August 15, 1985).

It is undisputed that the security sold to Hill and the other North Carolina residents was a limited partnership interest, and that similarity alone seems to satisfy the "same class" criterion. *See S.E.C. v. Murphy*, 626 F.2d 633, 646 (9th Cir.1980); *Currie v. Cayman Resources Corp.*, 595 F.Supp.

1364, 1377 (N.D.Ga.1984). Defendants' argument that there were two different classes of securities because the profits and losses between the two types of interests were allocated differently for the first seven years of the investment therefore fails.

Defendants also argue that the two offerings involved different securities because, while an adjustment was to be made in the event of tax law changes for both partnership interests, the nature of the adjustment differed between the Preliminary Units and the 1985 Units. This argument, however, is without merit. The Fifth Circuit has noted that where the sole practical distinction between two different designations of limited partnership interests was their differing tax deduction consequences, the offerings of the two limited partnership interests could be treated as an integrated offering. *Doran*, 545 F.2d at 901 n. 9.

In analyzing the integration factors, the court also notes that the offerings occurred at almost the same time, with one immediately following the other. The first offering commenced September 1, 1985 and ended November 1, 1985; the second ran from November 1, 1985 through December 15, 1985. Consequently, everyone that purchased securities pursuant to the second offering became a limited partner within two months of Mr. Hill. Finally, the court notes that the consideration for all the partnership interests was the same, cash and promissory notes.[11] *See Murphy*, 626 F.2d at 646; *Doran*, 545 F.2d at 901 n. 9.

Application of the integration factors reveals that the Montclaire securities were actually offered to six North Carolina residents, including Hill, and were therefore subject to the notice filing requirements of Rule 06.1205(b) of the Administrative Code. Defendants' violation of that provision pre-

---

10. The interrelationship is reinforced by defendants' argument that plaintiffs should be estopped from asserting their causes of action because the subsequent 1985 Limited Partners "relied" on Mr. Hill's commitment as the original limited partner.

11. The fact that the 1985 Limited Partners were required to pay interest on their unpaid install-

ments (whereas Hill as a Preliminary partner did not, and instead actually received interest on the monies he paid in), and the fact that the proportionate amount of cash and the terms of the notes differed are inconsequential. The test for "same type of consideration" has focused on the *form* of consideration.

cludes protection under the North Carolina private placement exemption of N.C.Gen. Stat. § 78A–17(9). *See Waterman v. Alta Verde Industries, Inc.,* 643 F.Supp. 797, 807 (E.D.N.C.1986) (holding violation of Rule 6.1205(c) precluded protection under exemption provisions). The Hill offering therefore violated the registration requirement of section 78A–24, and defendants are subject to the civil liabilities provision of section 78A–56(a)(1).

### D. The Estoppel Defense

The court, having found liability under section 78A–56(a) of the North Carolina Securities Act, will not address plaintiffs' other claims for relief.[12] The only matter left for discussion is defendants' contention that the plaintiffs are estopped from receiving any relief under the North Carolina Securities Act.

The Fourth Circuit has noted that since one of the purposes of the federal securities act regarding registration is to protect investors by requiring publication of information about a security, "enforcement of the Act by private litigation ordinarily should not be encumbered by defenses for which the statute makes no provision." *Lawler v. Gilliam,* 569 F.2d 1283, 1291 (4th Cir.1978). This statement seems particularly applicable here because the North Carolina Act is silent as to what defenses, if any, may be asserted against a claim under section 78A–56(a)(1). An analysis of the record reveals that the defendants have presented no facts that would provide a defense to plaintiffs' claim under the North Carolina Act.

■ The fact that Hill was somehow involved in the construction of the terms of his offering will not bar recovery. *See Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 2074, 100 L.Ed.2d 658 (1988) (stating that a suit under section 12(1) of the federal Securities Act of 1933, which permits rescission for purchasers of an unregistered security, should not be barred even when a plaintiff actively participates in the distribution of unregistered securities where his promotional efforts are incidental to his role as an investor). Furthermore, the record reflects that Hill did nothing to waive his rights under the North Carolina Act, if indeed those rights were even subject to waiver. *See Todaro v. E.F. Hutton & Co.,* [1982–83 Transfer Binder] Blue Sky L.Rep. (CCH) para. 71,957 (E.D. Va.1982).[13]

Defendants advance no fact that would estop plaintiffs from asserting their rights under the Securities Act,[14] and defendants purported reliance on the Hill purchase cannot overshadow their noncompliance with the law. Moreover, recovery in this instance in no way frustrates the purpose of the North Carolina Securities Act, even if Hill was not the average investor. *See Henderson v. Hayden, Stone Inc.,* 461 F.2d 1069, 1072 (5th Cir.1972) (discussing estoppel defense in the context of a suit under section 12(1) of the Securities Act of 1933). For the foregoing reasons, defendants motion for summary judgment on the grounds that plaintiffs are estopped from asserting a claim under the North Carolina Securities Act is DENIED.

---

**12.** Plaintiffs' other claims under section 78A–56(a)(2) and 78A–8, if decided in favor of plaintiffs, would only render the same form of relief as that provided by section 78A–56(a)(1).

**13.** Section 78A–56(i) of the North Carolina Securities Act specifically provides that any condition binding a person acquiring a security to waive compliance with the Securities Act is void. The district court in *Todaro* interpreted an identical provision of the Virginia Securities Act to void all waivers of rights under the Act, including waivers implied by conduct.

**14.** Several courts interpreting state securities laws similar to that of North Carolina have put severe restrictions on the estoppel defense or altogether determined that it is not available as

a defense for claims involving the nonregistration of securities. *See Hall v. Johnston,* 758 F.2d 421, 423 (9th Cir.1985) (holding that implying equitable defenses runs counter to Oregon's interest in securities registration and affirming district court's decision that sophisticated purchaser not estopped from recovery even when he knew sale violated blue sky law and received tax benefits from the investment); *Henderson v. Hayden, Stone Inc.,* 461 F.2d 1069, 1073 (5th Cir.1972) (holding defense of estoppel in case under Florida law is not available unless stock purchaser actually participates directly in the management or control of the issuing corporation).

## IV. *Conclusion*

It is therefore concluded that defendants are liable to the plaintiffs for rescission or damages under the civil liability provisions of the North Carolina Securities Act, N.C. Gen.Stat. 78A–56(a)(1), and that plaintiffs' claim is not barred by the statute of limitations or the defense of estoppel. The court, having determined that the plaintiffs are entitled to summary judgment on their claim under section 78A–56(a)(1), recognizes that such judgment will not finally adjudicate the rights, if any, of any of the intervening defendants in the Hill note. *See* Magistrate's Order of Sept. 7, 1989. Determination of the rights of the intervening defendants will be made at a future date after further order of the court addressing the scheduling of discovery and motions on the counterclaims.

The court also recognizes that it is not at this time possible to rule on the appropriate remedy unless FSLIC's contentions as to plaintiffs' continuing liability on the Hill note are also adjudicated. Any such determination will be made at a future date after affording the parties an opportunity to present argument to the court as to what remedy seems appropriate in light of the court's ruling concerning liability.