Filed: February 14, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1597
(1:08-cv-00003-CCB)

ANGELIA M. ANDERSON,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

O R D E R

Upon Appellee's unopposed motion for publication of the Court's Order of Certification,

IT IS ORDERED that the motion to publish is granted.

The Court amends its order filed December 20, 2011, as follows:

On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

On the cover sheet, section 6 -- the word "Unpublished" before "Order of Certification" is deleted, and the following sentence is added: "Judge Diaz prepared the order, in which Judge Davis and Judge Keenan joined."

On page 2 -- the heading "PER CURIAM" is deleted and is replaced with "DIAZ, Circuit Judge."

                              For the Court - By Direction


                                   /s/ Patricia S. Connor
                                        Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANGELIA M. ANDERSON,

       *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

       *Defendant-Appellee.*

No. 10-1597

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:08-cv-00003-CCB)

Argued: October 25, 2011

Decided: December 20, 2011

Before DAVIS, KEENAN, and DIAZ, Circuit Judges.

Order of Certification of a question of law to the Court of
Appeals of Maryland. Judge Diaz prepared the order, in
which Judge Davis and Judge Keenan joined.

## COUNSEL

**ARGUED:** Byron Leslie Warnken, WARNKEN, LLC, Tow-
son, Maryland, for Appellant. Lewis S. Yelin, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Appellee. **ON BRIEF:** Kerry D. Staton, Jonathan Scho-

chor, SHOCHOR, FEDERICO & STATON, P.A., Baltimore, Maryland, for Appellant. Tony West, Assistant Attorney General, Rod J. Rosenstein, United States Attorney, Thomas M. Bondy, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

# ORDER

DIAZ, Circuit Judge:

## I.   Question Certified

Angelia Anderson sued the United States under the Federal Tort Claims Act ("FTCA") in January 2008 in the U.S. District Court for the District of Maryland. In her complaint, Anderson alleges that she received negligent medical care at the Veterans Administration Medical Center in Baltimore, Maryland ("VA Hospital") from February through December 2002. The district court granted the government's motion to dismiss for lack of subject matter jurisdiction, reasoning that Maryland Code, Courts and Judicial Proceedings Article Section 5-109(a)(1) constituted a five-year statute of repose that barred Anderson's claim. On appeal, Anderson argues that Section 5-109(a)(1) constitutes a statute of limitations that is preempted by the FTCA's statute of limitations.

The U.S. Court of Appeals for the Fourth Circuit, exercising the privilege afforded it by the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. §§ 12-601 through 12-613, and Maryland Rule 8-305, now certifies the following question of Maryland law to the Court of Appeals of Maryland:

> Does Section 5-109(a)(1) of the Courts and Judicial Proceedings Article of the Maryland Code constitute a statute of limitations or a statute of repose?

The answer to this question does not appear to be directly controlled by any Maryland appellate decision, constitutional provision, or state statute. The Court of Appeals of Maryland has referred to Section 5-109 both as a statute of limitations and a statute of repose, *contrast Hill v. Fitzgerald*, 501 A.2d 27, 32 (Md. 1985), *with Rivera v. Edmonds*, 699 A.2d 1194, 1195 (Md. 1997), but no case appears to have conclusively resolved the issue.

The district court's finding that Section 5-109(a)(1) is a statute of repose stems primarily from a recent opinion of the Court of Appeals of Maryland discussing the statute, *Burnside v. Wong*, 986 A.2d 427, 440 (Md. 2010). The answer to this certified question is outcome determinative of this appeal because Anderson's claim may proceed if the district court erred in concluding that Section 5-109(a)(1) was a statute of repose. Therefore, the question is properly subject to review by the Court of Appeals of Maryland on certification.

We acknowledge that the Court of Appeals of Maryland may reformulate this question.

## II. Statement of Relevant Facts

Anderson first visited the VA Hospital in February 2002, complaining of lower back pain. An MRI revealed scattered marrow abnormalities in Anderson's lumbar spine and a radiologist recommended a bone scan, which was performed in May 2002 and showed abnormal results. Subsequently, a bone marrow biopsy was performed, resulting in a diagnosis of B-cell lymphoproliferative disease in Anderson's spine. Anderson was scheduled to begin chemotherapy in August 2002, but her doctors determined instead that a course of observation was more appropriate. Anderson was given a fentanyl patch to control her pain. Anderson returned to the VA Hospital in September 2002, reporting continuing pain on her left side; her doctors responded by increasing her pain medication.

On December 19, 2002, Anderson complained at the VA Hospital of increased pain and new symptoms, including pain and numbness radiating to her foot. She was discharged and instructed to report to the neurology clinic four days later. Anderson returned to the VA Hospital the next day complaining of increased pain in her back and an inability to move her legs. An MRI revealed no evidence of compression. Anderson again returned to the VA Hospital on December 23, reporting an inability to walk or stand and complaining of numbness up to her breasts. She was again discharged with instructions to return for another MRI on December 26. Anderson instead sought treatment at another hospital on December 24, where a physical examination and diagnostic tests revealed an epidural spinal tumor compressing her spinal cord. Anderson underwent immediate surgery to relieve the spinal compression and remained hospitalized until December 30.

Nearly a year later, on December 17, 2003, Anderson initiated an administrative claim with the Veterans Administration in Baltimore by filing a completed Standard Form 95 (Claim for Damage, Injury, or Death). She alleged that the VA Hospital failed to recognize the symptoms of progressive spinal cord compression due to an epidural spine tumor that developed as a result of her known cancer. She also alleged that the negligent care she received at the VA Hospital necessitated emergency surgery on her spine, and that, notwithstanding the emergency surgery, the VA Hospital's negligence left her with significant, permanent neurological deficits, severe and permanent disability, and incessant pain and emotional anguish.

For nearly four years, Anderson's claim proceeded through the administrative process, including significant settlement discussions, until it was denied as not amenable to administrative resolution by letter dated September 26, 2007. Anderson filed suit in the district court on January 2, 2008. The government moved to dismiss arguing that Anderson had failed to file a claim and an expert certificate with the Maryland Health

Care Alternative Dispute Resolution Office ("HCADRO"), as required by Maryland's Health Care Malpractice Claims Act (codified at Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04). The district court stayed the case to allow Anderson to file the complaint and certificate with HCADRO. Anderson complied and the district court lifted the stay.

The government then filed a second motion to dismiss, arguing that Section 5-109(a)(1), which it characterized as Maryland's statute of repose for health care malpractice claims, divested the court of subject matter jurisdiction because Anderson did not file her federal suit within the five-year statutory period. In its order granting the motion, the district court noted that Maryland courts have referred to Section 5-109 as a statute of limitations and that it contains tolling provisions that are generally inconsistent with statutes of repose. However, the district court concluded that, "particularly in light of the recent reference by the Court of Appeals in *Burnside*," it was "constrained to conclude that the state's highest court views § 5-109(a)(1) as a statute of repose." J.A. 227 (citing *Burnside*, 986 A.2d at 440). Thus, the district court granted the government's motion to dismiss for lack of subject matter jurisdiction.

The district court denied Anderson's subsequent motion for reconsideration, and Anderson timely appealed to this Court, assigning error to the district court's conclusion that Section 5-109(a)(1) is a statute of repose.[1]

---

[1]Anderson also argues on appeal that the district court erred by failing to find (1) that participation in the mandatory administrative procedures required by the FTCA tolls the running of the statutory period prescribed by Section 5-109 until the administrative process is exhausted, and (2) that the filing of a claims notice under the FTCA satisfies the requirement under Section 5-109 that an action for damages be filed within five years of the time the injury was committed. We do not certify these latter two questions.

III.   Legal Discussion and Relevant
Maryland Case Law and Legislation

A.   The Government's Limited
Waiver of Immunity under the FTCA

A plaintiff may recover against the United States only to
the extent that it has expressly waived sovereign immunity.
*Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (cit-
ing *United States v. Sherwood*, 312 US 584, 586 (1941)).
Where the United States has not waived its sovereign immu-
nity, a plaintiff's claim against the United States should be
dismissed for lack of subject matter jurisdiction under Federal
Rule of Civil Procedure 12(b)(1). *Williams v. United States*,
50 F.3d 299, 304 (4th Cir. 1995).

Congress waived the sovereign immunity of the United
States for certain torts committed by federal employees when
it enacted the FTCA in 1946. *Kerns v. United States*, 585 F.3d
187, 194 (4th Cir. 2009) (citing *FDIC v. Meyer*, 510 U.S. 471,
475 (1994)). However, the FTCA is a limited waiver of
immunity, imposing tort liability on the United States only "in
the same manner and to the same extent as a private individ-
ual under like circumstances," 28 U.S.C. § 2674, and only to
the extent that "a private person[ ] would be liable to the
claimant in accordance with the law of the place where the act
or omission occurred," *id.* § 1346(b)(1). In other words, a
claimant "has an FTCA cause of action against the govern-
ment only if she would also have a cause of action under state
law against a private person in like circumstances." *Miller v.
United States*, 932 F.2d 301, 303 (4th Cir. 1991). Thus, the
substantive law of each state establishes the cause of action.
*Kerns*, 585 F.3d at 194; *Unus v. Kane*, 565 F.3d 103, 117 (4th
Cir. 2009).

Whereas substantive state law establishes—and circum-
scribes—FTCA causes of action, "federal law defines the lim-
itations period." *Miller*, 932 F.2d at 303. This period is

codified in 28 U.S.C. § 2401, which provides, in pertinent part, that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." *Id.* § 2401(b). Here, it is undisputed that Anderson satisfied the FTCA statute of limitations by filing Standard Form 95 within one year of her injury.

State law may nevertheless speak to the timeliness of a claim brought under the FTCA, because a state's enactment of a statute of repose "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989). By contrast, a statute of limitations is a "procedural device that operates as a defense to limit the remedy available from an existing cause of action." *Id.* at 865. Thus, "[t]he distinction between statutes of limitations and statutes of repose corresponds to the distinction between procedural and substantive laws." *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987). Because statutes of repose are substantive limitations on liability, an FTCA claim does not lie against the United States where a statute of repose would bar the action if brought against a private person in state court. *See*, *e.g.*, *Simmons v. United States*, 421 F.3d 1199, 1202 (11th Cir. 2005) (affirming dismissal of FTCA action that was filed after period specified in state statute of repose).

Thus, the key inquiry in this case is whether Section 5-109(a)(1) is a substantive statute of repose or a procedural statute of limitations. If the former, then Anderson's claim may be barred,[2] because allowing it to proceed would poten-

---

[2]As noted earlier, Anderson argues that even if Section 5-109(a)(1) is a statute of repose, the district court erred by failing to find (1) that participation in the mandatory administrative procedures required by the FTCA tolls the running of the statutory period prescribed by Section 5-109 until the administrative process is exhausted, and (2) that the filing of a claims notice under the FTCA satisfies the requirement under Section 5-109 that an action for damages be filed within five years of the time the injury was committed.

tially impose liability on the government in a different manner and to a greater extent than on a private individual under like circumstances. If the latter, however, the FTCA's two-year statute of limitations preempts the state statute and Anderson's claim survives because it was properly presented within that period.

### B.    The Statutory Text of Section 5-109(a)

Section 5-109(a) provides in relevant part as follows:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider . . . shall be filed within the earlier of: (1) Five years of the time the injury was committed; or (2) Three years of the date the injury was discovered.

Md. Code Ann., Cts. & Jud. Proc. § 5-109(a). The periods are subject to tolling for minority, incompetency, and fraudulent concealment. *Id.* § 5-109(f) ("Nothing contained in this section may be construed as limiting the application of the provisions of: (1) § 5-201 of this title that relate to a cause of action of a mental incompetent; or (2) § 5-203 of this title [relating to fraudulent concealment]."); *Piselli v. 75th St. Med.*, 808 A.2d 508, 517 (Md. 2002) (holding that both the three- and five-year statutory periods must be tolled during a plaintiff's minority).

The Court of Appeals of Maryland has aptly summarized the uncertainty in the statutory language:

> [I]t is not clear whether the General Assembly intended § 5-109 to be either (A) a five-year statute of repose with a provision that allows a defendant to cut that period short by up to two years if the defendant can show that the plaintiff did not comply with the three-year discovery provision, or (B) a three-

> year statute of limitations with a provision that could allow the plaintiff to extend that period up to five years if the plaintiff can show that he or she filed the claim within the three-year discovery provision.

*Newell v. Richards*, 594 A.2d 1152, 1157 (Md. 1991).

Anderson makes three principal arguments to support her view that Section 5-109(a)(1) is a statute of limitations. First, she points out that the event that triggers the running of the statutory period for both the five-year period in (a)(1) and the three-year period in (a)(2) is an "injury." The Court of Appeals of Maryland has held that an injury is committed on "the date upon which the allegedly negligent act was first coupled with harm." *Hill*, 501 A.2d at 32. Thus, Anderson argues that an injury that triggers the running of the statutory period is not necessarily committed on the date upon which an allegedly negligent act occurs, and that Section 5-109(a)(1) thereby "contradicts the fundamental requirement of a statute of repose, i.e., that it operates from a fixed point in time and can terminate a cause of action before injury occurs." Appellant's Br. 27.

Anderson contrasts this feature with the ability of a statute of repose to extinguish a plaintiff's claim before it accrues, when a plaintiff's injury fails to materialize prior to the running of the fixed statutory period. It is this ability to extinguish claims prior to their accrual, Anderson argues, that is the quintessential barometer of a statute of repose. *Id.* at 25-26 (citing *Hinds v. CompAir Kellogg*, 776 F. Supp. 1102, 1105 (E.D. Va. 1991), *aff'd per curiam*, 961 F.2d 211 (4th Cir. 1992) (unpublished); *Walker v. Montclaire Hous. Partners*, 736 F. Supp. 1358, 1361 (M.D.N.C. 1990)). Because the running of the statutory period commences upon "injury," Anderson contends that Section 5-109(a)(1) cannot operate to extinguish a cause of action before an injury arises and the claim accrues, and that it thus lacks the substantive quality of a statute of repose.

Second, Anderson notes that, as a general rule, statutes of limitations are subject to tolling whereas statutes of repose are fixed. However, Section 5-109(f) expressly provides that both the five-year period in (a)(1) and the three-year period in (a)(2) may be tolled in instances of minority, mental incompetency, and fraudulent concealment. Anderson concludes from these statutory tolling provisions that "the Maryland General Assembly provided further evidence that CJ § 5-109 should not be interpreted as providing a substantive right to be free from liability." Appellant's Br. 30.

Finally, Anderson compares Section 5-109(a)(1) with Section 5-108 of the Courts and Judicial Proceedings Article of the Maryland Code, claiming that the latter is unmistakably a statute of repose and that a comparison of the two statutes reveals that Section 5-109(a)(1) is a statute of limitations.[3] Section 5-108, concerning injuries after improvements to real property, provides:

> (a) Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use. . . .

> (c) Upon accrual of a cause of action referred to in subsections (a) and (b) of this section, an action shall be filed within 3 years.

---

[3]This Court has found Section 5-108 to be a statute of repose. *See First United*, 882 F.2d at 865 ("Maryland courts have repeatedly recognized [that] § 5-108 is a statute of repose. . . ."); *id.* at 866 (refusing to construe Section 5-108 as "provid[ing] anything other than the 20-year repose period" because it did not permit tolling).

*Id.* § 5-108(a), (c).

Anderson claims that Section 5-108 "operates as a statute of repose because it (1) precludes accrual of any claim, regardless of when (or if) injury occurs, after a fixed period of time; (2) is not subject to tolling; and (3) was expressly intended to confer substantive immunity from suit." Appellant's Br. 31.[4] Anderson argues that, conversely, Section 5-109(a)(1) is a statute of limitations because it requires an injury to trigger the running of the statute, cannot eliminate a cause of action before it accrues, is subject to tolling, and does not evidence an express grant of substantive immunity on medical malpractice defendants.

Before addressing Anderson's arguments, the government describes two features of Section 5-109(a)(1) that it contends cut in favor of the statute's construction as a statute of repose. First, the government posits that statutes of repose are "based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." Appellee's Br. 23 (quoting *First United*, 882 F.2d at 866). Because Section 5-109(a)(1) was enacted to promote those considerations, the government argues that the district court properly characterized it as a statute of repose.

The government contends further that the Maryland General Assembly enacted Section 5-109(a)(1) not out of concern for court management or to address problems associated with

---

[4]As to the substantive immunity granted by Section 5-108, Anderson quotes the Revisor's Note to Section 5-108 when it was enacted in 1970: "The section is drafted in the form of a statute of limitation, but, in reality, it grants immunity from suit in certain instances." *Carven v. Hickman*, 763 A.2d 1207, 1212 (2000) (quoting Revisor's Note), *aff'd sub nom. Hickman ex rel. Hickman v. Carven*, 784 A.2d 31 (2001).

stale or fraudulent claims—which the government urges are the principal purposes underlying statutes of limitations—but " 'to contain the 'long-tail' effect of the discovery rule in medical malpractice cases.' " *Id.* 25 (quoting *Hill*, 501 A.2d at 32 ("The statute is a response to the so-called crisis in the field of medical malpractice claims.")). In so doing, the government posits that the legislature acted to "promote society's interest in maintaining malpractice insurance coverage and managing the costs of malpractice litigation," *Newell*, 594 A.2d at 1157, fulfilling the principal purpose underlying a statute of repose of promoting the "economic best interests of the public as a whole," *First United*, 882 F.2d at 866.

The government contends that the Court of Appeals of Maryland confirmed this policy objective in *Hill*, where the court noted that Section 5-109(a)(1) was intended to "restrict[ ], in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment." 501 A.2d at 32. As further evidence of this, the government points to the legislature's proscription of judicial tolling to extend statutory limits, claiming that this limitation on judicial discretion is typical of statutes of repose and inconsistent with statutes of limitations.

The government also argues that a comparison of Section 5-108 with Section 5-109(a)(1) supports the construction of the latter as a statute of repose. The government emphasizes the legislative purposes it claims animated the enactment of both statutes, contending that both stemmed from a "public policy problem resulting from the exposure to potentially prolonged periods of liability by professionals providing important public services." Appellee's Br. 32. The government submits that both statutes were enacted "based on considerations of the economic best interests of the public as a whole" and "based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *First*

*United*, 882 F.2d at 866. As such, the government contends that both statutes exhibit the same key feature of statutes of repose and should both be so construed.

Responding to Anderson's first argument in favor of construing Section 5-109(a)(1) as a statute of limitations—that the suffering of an injury triggers the running of the statute, whereas a typical statute of repose begins to run from the date of a tortfeasor's act or omission—the government explains that "[t]here are sound reasons why a time limit need not be capable of extinguishing a claim before a plaintiff suffers injury in order for it to be a statute of repose." Appellee's Br. 37. The government contends that, as a general matter, legislatures must balance competing interests, and, in the case of Section 5-109(a)(1), the Maryland legislature decided that "its policy goals would best be served by measuring the time limit from the occurrence of an injury." *Id.* 38.

As for Anderson's contention that the presence of tolling provisions renders Section 5-109(a)(1) a statute of limitations, the government again responds that the legislature's decision to include such provisions is part of the balance struck in addressing the underlying problem. What statutes of repose forbid, contends the government, is judicially-created tolling because that would upset the balance struck by the legislature. The features Anderson relies on to support her view of Section 5-109(a)(1) as a statute of limitations are, according to the government, instead consistent with a statute of repose.

## C.   Relevant Maryland Cases

Exactly a decade after Section 5-109 was enacted in 1975, *Hill* presented the Court of Appeals of Maryland with its first opportunity to interpret the statute, in a question certified from the U.S. District Court for the District of Maryland seeking "a determination as to when the three- and five-year limitation periods begin to run in a case which involves . . . a continuous course of treatment for a single medical condi-

tion." 501 A.2d at 32. *Hill* described Section 5-109 as "Maryland's statute of limitations for medical malpractice claims," *id.* at 28, that "places a five-year maximum limitation on the filing of medical malpractice claims," *id.* at 29. The court further concluded "that the words of § 5-109 expressly place an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed, i.e., the date upon which the allegedly negligent act was first coupled with harm." *Id.* at 32.

According to the *Hill* court, the purpose of the statute was "to contain the 'long-tail' effect of the discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment." *Id*. The court further described the statute as a "response to the so-called crisis in the field of medical malpractice claims." *Id.*

Responding to the certified question, the court concluded:

> The three- and five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5-109 [beginning upon the date in which the allegedly negligent act was first coupled with harm]. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not.

*Id.* at 32-33.[5]

---

[5]Despite the "limitation" nomenclature, the government argues that the court's reference to Section 5-109 as "an *absolute* five-year period of limitation" that "restrict[s], in *absolute* terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim," *Hill*, 501 A.2d at 32 (emphasis added), compels the statute's construction as a statute of repose.

Three years later, in *Geisz v. Greater Baltimore Medical Center*, 545 A.2d 658 (1988), the Court of Appeals of Maryland considered a case in which the injury to the patient predated the enactment of Section 5-109. The patient's survivors brought a wrongful death and survival action more than ten years after the patient died of cancer, and the issue presented was whether the survival claim was barred under the discovery rule of the general three year statute of limitations in effect prior to the enactment of Section 5-109. *Id.* at 659. Although the applicability of Section 5-109 was not at issue, the court consistently described it as a "statute of repose for medical malpractice claims." *Id.*; *see also id.* at 660 n.3, 661, 666-67, and 669 n.9. Notably, the court stated that Section 5-109 "clearly reinforces the policy of repose underlying all statutes of limitations and caps the discovery rule." *Id.* at 667.

The court seemed to retreat from the *Geisz* "repose" characterization in *Jones v. Speed*, 577 A.2d 64 (Md. 1990). In *Jones*, the court described the case as involving "the effect of Maryland's statute of limitations upon a medical malpractice claim." *Id.* at 65. Like *Hill*, the dispute also centered on the question of when an injury was committed to trigger the statutory periods in Section 5-109. The court concluded that "the claim was brought within three years of discovery of [the] injury; and, it is clear that the claim was brought within five years of the time the injury was alleged to have been committed. The statute of limitations is therefore not a bar." *Id.* at 70.

Since *Jones*, opinions of the Court of Appeals of Maryland have predominantly characterized Section 5-109 as a statute of repose, albeit not consistently.[6] For example, in 1991, the court in *Newell* stated, "In malpractice actions against health

---

[6]The lone exception is *Rios v. Montgomery County*, 872 A.2d 1 (Md. 2005), in which the court recounted that in an earlier case it had "concluded that the statutes of limitations contained in Section 5-109 as applied to minors violated Article 19 of the Maryland Declaration of Rights as an unreasonable restriction." *Id.* at 21.

care providers, in lieu of the general statute of limitations, there is a special statute of repose, § 5-109 of the Maryland Code . . . ." 594 A.2d at 1156. The court nevertheless concluded that the plaintiff's claim "was filed within the five-year *limitations* period." *Id.* at 1157 (emphasis added). Addressing the parties' contentions, the court explained, "Although Richards [the alleged tortfeasor] argues that Newell [the plaintiff] is attempting to avoid the three-year *limitation* in the statute, Newell may just as logically argue that Richards is attempting to avoid the five-year *limitation* in the statute." *Id.* (emphasis added). After restating some of the historical and policy arguments from *Hill*, the court concluded that "it is obvious that the primary purpose of [Section 5-109] is to create a total bar to malpractice actions brought after five years from the date of the alleged negligent treatment . . . ." *Id.*[7]

In *Rivera*, a 1996 case, the Court of Appeals of Maryland again described Section 5-109 as "the medical malpractice statute of repose." 699 A.2d at 1195. The case also involved the determination of when an injury occurs for purposes of triggering the statutory periods. The Court of Appeals of Maryland affirmed the judgment of the Court of Special Appeals, which had reversed the trial court's determination on summary judgment that the plaintiff's claim was time barred, holding instead that genuine issues of material fact existed as to when the plaintiff suffered her injury. Notably, the Court of Special Appeals appeared to reject a characterization of Section 5-109 as a statute of repose, finding that the failure of an amendment to Section 5-109 proposed in 1987 demonstrated "that the General Assembly did not intend to create an ironclad rule that a medical malpractice claim would be barred if filed more than five years after the health care pro-

---

[7]We note that *Newell* refers to date of "the alleged negligent treatment" as the trigger for the five-year statutory period. 594 A.2d at 1157. By its plain terms, however, a plaintiff's "injury" is the trigger under Section 5-109. Pursuant to *Hill*, an injury is committed on "the date upon which the allegedly negligent act was first coupled with harm." 501 A.2d at 32.

vider's wrongful act." *Edmonds v. Cytology Servs. of Md., Inc.*, 681 A.2d 546, 557 (Md. Ct. Spec. App. 1996). The proposed amendment would have "ma[d]e it express that the statutory periods begin to run from the date of the 'allegedly wrongful act or omission' in place of the common law term 'injury.' " *Id.* (quoting a position paper prepared by the Legislative Office of the Governor).

According to the Court of Special Appeals, the rejection of the amendment illustrated that the Maryland legislature, on the one hand, sought "to combat the 'long-tail effect' on medical malpractice insurance," while also "wish[ing] to lessen the potential unfairness to victims of malpractice by not overly restricting their ability to present their claims." *Id.* at 557. The court concluded that the legislature reconciled the competing interests by providing a five-year cut off in Section 5-109(a)(1) that would run from the date of the "injury" resulting from the health care provider's wrongful act or omission, rather than the actual date of the act or omission. *Id.* at 557-58.

To be clear, the proposed amendment, and the court's analysis of it, did not directly address the question of whether Section 5-109 is a statute of limitations or a statute of repose. Nevertheless, the import of an "injury," as opposed to a defendant's act or omission, serving as the trigger for the statutory periods constitutes one of the key disputes between the parties in this case as to whether Section 5-109(a)(1) is a statute of repose or a statute of limitations.[8]

---

[8]The court further explained,

> The Maryland Legislature could have followed the great majority of jurisdictions by enacting a statute providing for the commencement of limitations on the date of the defendant's alleged "act" or "omission." . . . Despite the plethora of statutes in other states to this effect, our Legislature did not adopt such a provision.

*Id.* at 556-57.

Several other opinions of the Court of Appeals of Maryland have described Section 5-109 as a statute of repose. In *Green v. North Arundel Hospital Association*, 785 A.2d 361 (Md. 2001), the court referred to "the statute of repose codified in [Section 5-109], which requires a medical malpractice action to be filed within five years after the time 'the injury was committed.' " *Id.* at 368. This case is notable because it appears to be the first in which the court specifically described the five-year period of subsection (a)(1) as a statute of repose, rather than a generic description of Section 5-109 in its entirety as either a statute of repose or a statute of limitations.

The Court of Appeals of Maryland noted this distinction in *Piselli*, where it discussed "the three-year statute of limitations of section 5-109(a)(2)," 808 A.2d at 513 (quoting the U.S. Court of Appeals Certification Order), and the "five-year statute of repose for medical malpractice actions," *id.* at 519, but nevertheless held generically that "mandating that the three and five-year *limitations* periods run against a minor's tort claim from the time the minor is 11 years old, or under a few circumstances 16 years old, is an unreasonable restriction upon a child's remedy and the child's access to the courts," *id.* at 524 (emphasis added).

Finally, in *Burnside*, the Court of Appeals of Maryland again referred to Section 5-109 as both a statute of limitations and statute of repose. First, the *Burnside* court quoted the entirety of Section 5-109(a), labeling it "the statute of limitations." 986 A.2d at 440. However, the court later referred to its earlier analysis in *Rivera*, which it claimed "also involved the application of the statute of repose to a failure to diagnose medical malpractice claim." *Id.* Thus, although the district court below relied on *Burnside* in favoring a construction of Section 5-109 as a statute of repose, we cannot be as confident that *Burnside* meaningfully resolves the question.

In sum, it does not appear that the Maryland cases have resolved definitively whether Section 5-109 is a statute of

repose, a statute of limitations, or both, with subsection (a)(1) serving as a statute of repose and subsection (a)(2) a statute of limitations. The lack of definitive guidance necessitates certification of this question.

## IV.   The Parties and Their Counsel

Counsel of record for Anderson are Byron Warnken, Warnken, LLC, 300 East Joppa Road, Suite 303, Towson, Maryland, 21286, and Kerry Staton and Jonathan Schochor, Schochor, Federico & Staton, P.A., 1211 St. Paul Street, Baltimore, Maryland, 21202. Counsel of record for the United States are Thomas Bondy and Lewis Yelin, Civil Division, U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

## V.   Conclusion

Pursuant to the privilege made available by the Maryland Uniform Certification of Questions of Law Act, we hereby ORDER: (1) that the question stated above be certified to the Court of Appeals of Maryland for answer; (2) that the Clerk of this Court forward to the Court of Appeals of Maryland, under the official seal of this Court, a copy of this Order, together with the original or copies of the record before this Court to the extent requested by the Court of Appeals of Maryland; and (3) that the Clerk of this Court fulfill any request for all or part of the record simply upon notification from the Clerk of the Court of Appeals of Maryland.

*QUESTION CERTIFIED*